Ex parte ASIT RANJAN GHOSH.

Civil Action No. 3927.

District Court, S. D. California, Central Division.

Nov. 16, 1944.

A. L. Wirin and J. B. Tietz, both of Los Angeles, Cal., for petitioner.

Charles H. Carr, U. S. Atty., by Arthur Livingston, Asst. U. S. Atty., both of Los Angeles, Cal., for respondent.

HALL, District Judge.

The facts[1] and applicable laws being still fresh in everyone's mind from the argument makes it superfluous to review them in these comments. Nor will the

[1] Asit Ranjan Ghosh was born in Bengal, India, on April 29, 1919. He is a Hindu and hence, by virtue of his race, ineligible, to become a citizen of the United States. United States v. Bhagat Singh Thind, 261 U.S. 204, 43 S.Ct. 338, 67 L.Ed. 616. He is, and at all times concerned in this proceeding was, a citizen or subject of British India. From 1935 to 1939 he attended Bankura College, Bengal, India, and received from there a B.A. degree. On January 11th, 1940 he came to the United States as a non-quota immigrant with a student status for the purpose of attending the University of Southern California, as a graduate student. On October 16, 1940, he registered in the Selective Service System, as then required by the law, at Local Board 220.

His purpose in coming to the United States was to continue his studies in the courses available at the University of Southern California "which would prepare him to become a technician and director in the film production industry of India." Upon his arrival it was anticipated that his course to secure an M. A. Degree would be completed in two years from the date of his arrival. This was not done because his thesis was not completed. He applied for and secured from the Immigration and Naturalization Bureau an extension of his visa for two more years in the student status. He filed his questionnaire with the Local Board on April 1, 1941, and thereafter on April 29, 1941, he was classified in 4-C as a citizen of a neutral country. Thereafter, India became a co-belligerent. On May 4, 1942, the petitioner filed an application for a determination by the Local Board as to whether or not he was "residing in the United States" within the meaning of the Selective Service Law. He filed the appropriate and required forms in connection with that application and supplemented it with a personal letter, wherein he stated that his course of two years as originally planned was completed, but that he was continuing his graduate studies in what is described as "Cinema."

Thereafter, and upon that showing, under date of February 20, 1943, the Local Board determined that he was not "residing in the United States" and issued to him an alien's certificate of non-residence. The date of the certifi-

cate indicated the expiration to be June 30, 1943. Pursuant to the regulations this information was transmitted to the State Director of Selective Service. Thereafter, under date of March 1, 1943, the State Director of Selective Service directed the Local Board to forward the cover sheet (which means the entire file) of the registrant to State Headquarters "in the first mail." The evidence shows that this was done and that the file was returned without comment. Thereafter, on June 15, 1943, the petitioner again filed for an extension of his certificate of non-residence and on August 4, 1943, he filed in accordance with the requirements a supplemental questionnaire wherein he indicated that he was studying "drama" at U. S. C., and that he had begun in "Cinema" but finished that course and would not complete the course in "drama" until 1945. He also indicated that he worked at Austin Studios for experience and for pay only during vacation, and had never worked at any other time since he had been in the country. Pursuant to that application the Local Board again on September 9, 1943, issued to him an alien certificate of non-residence, which was to expire December 31, 1943. On December 22, 1943, he again filed for an extension of his certificate, filing a supplemental questionnaire containing the same information, and again the Local Board acting thereon, under date of January 26, 1944, issued him an alien certificate of non-residence, and forwarded to the State Director a report of their action as they had done in each instance.

On February 12, 1944, the State Director of Selective Service ordered the Board to transmit the cover sheet of the petitioner to the State Headquarters "in the first mail" which was done. Thereafter, on March 1, 1944, the State Director of Selective Service wrote the Local Board to the effect that petitioner had overstayed the original purpose of his entry and stated, "Consequently, it would seem that he is no longer entitled to exemption in accordance with the policy laid down by national headquarters for cases of this kind * * * it is requested that further consideration be given to this case and that a new determination of residence be made * * * if you determine that Mr. Ghosh

brevity of these comments permit any extended analysis of the law or various regulations. I will very briefly and informally state the grounds of my decision.

I think a writ should be granted. I do not believe that any of the points which the government has raised are sufficient to show that this man did have due process. I believe he was denied due process. I think the action of the local board was arbitrary and capricious when it reversed its three previous determinations that he was not a resident of the United States. I do not think there was any evidence to support it.

I do not think the rules and regulations provide any norm or standard by which the local board can determine whether or not a person is in one of the "other categories" mentioned in Section 5 of the Act, 50 U.S.C.A.Appendix, § 305;[2] nor do they provide a norm or standard by which if certain facts are present it can determine whether or not a person is or is not "re-

---

is entitled to further exemption, please consider this letter as an appeal by the State Director and forward the file to this headquarters." The Local Board in a regular meeting on March 10, 1944, with nothing before it in addition to that which was before it on the three previous occasions, except the letter of March 1, 1944, from the State Director, indicating his desire that they should reclassify and re-determine his residence, summarily canceled the certificate which they had previously granted and determine that the petitioner was "residing in the United States." Thereafter, the petitioner visited the Local Board and requested information as to his procedure, and was advised by a Clerk in the office that he could not appeal to the President, but he did, upon the form provided, sign his name to the written form which constituted an appeal to the Director of Selective Service. This was done on March 13, 1944. He filed at or about that time a certificate from the Director of the School of Speech of the University of Southern California, which he was attending; that he was a student, was studying for a P.H.D. degree with a major in speech. He filed another letter indicating that he was continuing his studies and would not receive his degree before the end of 1945, and reminded the Board that he was still considered as a non-quota immigrant by the Immigration Office, and not a resident-alien. Under date of March 21st, the file was transmitted to the State Director of Selective Service, and by them transmitted to the National Director of Selective Service, who under date of June 22, 1944, advised the State Director of Selective Service that National Director concluded he was not entitled to an alien certificate of non-residence and that the Local Board was to proceed to register and induct him. This communication was received by the Local Board on July 4, 1944, and on July 7, 1944, the petitioner was notified that the National Director of Selective Service had determined he was "residing in the United States."

Thereafter, under date of September 7, 1944, the petitioner received his order to report for induction, and pursuant thereto, was duly and regularly inducted into the United States Army.

[2] Section 3(a), 50 U.S.C.A.Appendix, § 303(a): "Except as otherwise provided in this Act, every male citizen of the United States, and every other male person residing in the United States * * * shall be liable for training and service in the land or naval forces of the United States."

Section 5(a), 50 U.S.C.A.Appendix, § 305(a): "* * * and persons in other categories to be specified by the President, residing in the United States, who are not citizens of the United States, and who have not declared their intentions to become citizens of the United States, shall not be required to be registered under section 2 and shall be relieved from liability for training and service under section 3(b)".

From a search of the regulations and the numerous (and confusing) amendments made, it appears that the only designation of "categories" made by the Director of Selective Service under his delegated powers is to be found in Sections 611.11, 611.12 and 611.13 of the Regulations, the pertinent part of which reads as follows:

"611.11 Every Declarant Alien Is Residing in the United States. Every male alien who has declared his intention to become a citizen of the United States is 'a male person residing in the United States' within the meaning of section 2 and section 3 of the Selective Training and Service Act of 1940, as amended.

"611.12 When a Nondeclarant Alien Is Residing in the United States. Every male alien who is now in or hereafter enters the United States who has not declared his intention to become a citizen of the United States, unless he is in one of the categories specifically excepted by the provisions of section 611.-13, is 'a male person residing in the United States' within the meaning of section 2 and section 3 of the Selective

siding in the United States," as that term is used in Sections 2 and 3 of the Act, 50 U.S.C.A.Appendix, §§ 302, 303.

█ In connection with this matter the determination by the Bureau of Naturalization and Immigration that this man retained his student status and is thus not a resident, must be given weight. He is not, under the Immigration and Naturalization Laws, entitled either to citizenship, or to be a permanent resident of the United States, or a resident at all. At the most, he can only be a visitor, and that only so long as he remains a student. He is unlawfully in the United States, unless he is here only temporarily, as a visitor. And that Bureau held he is here temporarily as a visitor-student. He came in as a student, he is still a student and they renewed his visa as such.

While it may be argued that such determination is not binding upon the Director of Selective Service nor upon the local board, still the local board did not make any inquiry in that respect, or in that case, when they made their decision on March 10th.

And after all, it is one government, and I do not think it is within the contemplation of our system that a man should be fish before one department and fowl before another. If he can be a student-visitor—and not a resident—so far as the government of the United States is concerned when it is interpreted by the Department of Immigration and Naturalization, and be a resident so as to subject him to military service on behalf of the United States insofar as some other government department is concerned, it would require I think what John Marshall called refined and metaphysical reasoning. One thereby might sustain such a contrary conclusion by two departments of one government.

But, after all, in connection with this matter and in connection with all matters that pend before the courts and acts of the government, the government of the United States is trying to set an example of doing justice. It has been the established policy of the United States for many years to invite aliens to come to the United States in order to participate in our educational system. And pursuant to that policy, they amended the immigration laws to permit

---

Training and Service Act of 1940, as amended."

"611.13 When a Nondeclarant Alien Is Not Residing in the United States. A male alien who is now in or hereafter enters the United States who has not declared his intention to become a citizen of the United States is not 'a male person residing in the United States' within the meaning of section 2 or section 3 of the Selective Training and Service Act of 1940, as amended; provided he has in his personal possession an official document issued pursuant to authorization of or described by the Director of Selective Service which identifies him as a person not required to present himself for and submit to registration and provided: * * *

"(7) He has, within the time prescribed and in the manner provided in section 611.21, filed with the local board with which he is registered, or if he is not registered with the local board having jurisdiction over the area in which he is located, an Alien's Application for Determination of Residence (Form 302), together with an Alien's Personal History and Statement (Form 304), and such application is either pending or has resulted in the issuance by the local board of an Alien's Certificate of Nonresidence (Form 303) which has not expired; or"

"(8) He is an individual designated by the Director of Selective Service as not required to present himself for and submit to registration, or * * *"

Section 611.21, entitled "Procedure for Determining When Alien Is Residing in the United States," is no more illuminative than any of the other regulations as to what facts are determinative of that ultimate question.

Section 611.21 reads as follows:

"611.21 What Aliens May Apply for a Determination. Any nondeclarant alien who has entered or who hereafter enters the United States in a manner prescribed by its laws, except a non-declarant alien described in subparagraphs (1), (2), (3), (4), (5), (8) and (9) of section 611.13, may file with his local board, if he is registered, or with the local board where he is at the time located, if he is not registered, an Alien's Application for Determination of Residence (Form 302); provided, that such application is filed within 3 months after the date of his entry into the United States or within 3 months after persons of his age become liable for training and service by law, whichever is the later; and provided further, that such application is filed prior to induction. An Alien's Personal History and Statement (Form 304) must be filed with such application."

them to come here. We have excused them from many obligations that are imposed upon citizens in order that we might extend to them what we hope and believe is the system of American culture as taught in our schools.

It does not seem to me to comport with justice that we should continue to do that and because a man is here and when he finishes the particular course he had in mind when he arrived, but continues as a student pursuing the same subjects, the country which invited him then impress him into their armed services.

█ I seriously doubt the validity of the sections of the regulations we were talking about this afternoon, whereby the

Director of Selective Service takes away from persons who are seeking a certificate of non-residence the right to appeal to civilian appeal boards or to the President. I believe that under the law the exclusive methods of appeal described are appeals to the appeal boards and appeals to the President.[3] I do not think that it was contemplated by Congress when it authorized the President to delegate whatever powers he had that that would authorize a delegation to the Director of Selective Service to deprive people of a right which Congress was very careful to guard, in setting up what they described as a civilian system of local boards and appeal boards where civilians could determine best who could serve in the armed forces and who best could

[3] Section 10 of the Act, 50 U.S.C.A.Appendix § 310, reads as follows:

"Sec. 10. Rules and Regulations; Selective Service System. (a) The President is authorized—

"(1) to prescribe the necessary rules and regulations to carry out the provisions of this Act;

"(2) to create and establish a Selective Service System, and shall provide for the classification of registrants and of persons who volunteer for induction under this Act on the basis of availability for training and service, and shall establish within the Selective Service System civilian local boards, civilian appeal boards, and such other agencies, including agencies of appeal, as may be necessary to carry out the provisions of this Act. There shall be created one or more local boards in each county or political subdivision corresponding thereto of each State, Territory, and the District of Columbia. Each local board shall consist of three or more members to be appointed by the President, from recommendations made by the respective Governors or comparable executive officials. No member of any such local board shall be a member of the land or naval forces of the United States, but each member of any such local board shall be a civilian who is a citizen of the United States residing in the county or political subdivision corresponding thereto in which such local board has jurisdiction under rules and regulations prescribed by the President. Such local boards, under rules and regulations prescribed by the President, shall have power within their respective jurisdictions to hear and determine, subject to the right of appeal to the appeal boards herein authorized all questions or claims with respect to inclusion

for, or exemption or deferment from, training and service under this Act of all individuals within the jurisdiction of such local boards. The decisions of such local boards shall be final except where an appeal is authorized and is taken in accordance with such rules and regulations as the President may prescribe. Appeal boards within the Selective Service System shall be composed of civilians who are citizens of the United States. The decision of such appeal boards shall be final in cases before them on appeal unless modified or changed by the President as provided in the last sentence of section 5(l) of this Act. * * *

"(3) to appoint, by and with the advice and consent of the Senate and fix the compensation of at a rate not in excess of $10,000 per annum, a Director of Selective Service who shall be directly responsible to him and to appoint and fix the compensation of such other officers, agents, and employees as he may deem necessary to carry out the provisions of this Act: Provided, That any officer on the active or retired list of the Army, Navy, Marine Corps, or Coast Guard, or of any reserve component thereof or any officer or employee of any department or agency of the United States who may be assigned or detailed to any office or position to carry out the provisions of this Act (except to offices or positions on local boards or appeal boards established or created pursuant to section 10 (a) (2)) may serve in and perform the functions of such office or position without loss of or prejudice to his status as such officer in the Army, Navy, Marine Corps, or Coast Guard or reserve component thereof, or as such officer or employee in any department or agency of the United States: * * *."

serve at home in the war effort.[4] The law specifically gives these boards the power not only of determining exemptions and deferments, but also all questions or claims of individuals with respect to who is or who is not included by the Act. Congress was very careful to keep that out of the hands of the military. The denial of that right of appeal is a denial of due process. I am inclined to think, in view of the prohibitions of the Act against army officers serving on local or appeal boards, although I do not think it is necessary to pass on the question, and I do not pass on it in this case, that the fact that the Director of Selective Service is a brigadier general would deprive him of the power of acting on the appeal here.[5]

It seems to me due process has also been denied the petitioner, because there is no rule promulgated in the regulations whereby any standards are established for any person who is subject to the Act to determine whether or not he is or is not entitled to a certificate of non-residence.

I believe that the power existed under Section 5 of the Act for the President to establish "categories of people" who would be non-residents. But the President delegated his power to the Director of Selective Service in that connection. The Director of Selective Service did not either in his own name or in the name of the President specify or establish any categories other than those that, in the Act, are designated with particularity.

---

[4] Selective Service Regulations Part 611 deals with aliens. By paragraph 611.23 and 611.24 the petitioner was not permitted to appeal to a Civilian Appeal Board, but was limited in his right of appeal to make an appeal only to the Director of Selective Service.

[5] In the report to the House on the Selective Service Act it was stated (Aug. 5, 1940: Report 2002):

"It is the purpose of the bill herewith reported to provide for a fair and just system of selective compulsory military training and service. In a free society the obligations and privilege of service to the Nation should be shared equally by all, and a selective system of compulsory military service, in fact administered locally by one's own neighbors, is the fairest and most universally demanded method of reaching this desirable objective. In times of grave national emergency personal convenience must in some respects be yielded up in favor of the safety and very existence of the Nation as a whole. It can be said, however, that the bill attains the stated objective with the least social and economic disruption consistent with the needs of national defense and welfare."

And in a pamphlet published by the United States Government Printing Office and released in 1939 a report "Prepared Under the Supervision of the Joint Army and Navy Selective Service Committee" stated in its first paragraph as follows:

"I. Basis of American Selective Service. After raising its wartime armies by wasteful and unsatisfactory expedients for many generations, the United States upon entering the World War in 1917 adopted a system which proved sound and economical to the Government and acceptable to the people. Under it an adequate number of men was procured for the duration of the war by a National selective draft administered through the machinery of local self-government. Service of the selected individuals was compulsory and without the exercise of any option on their part. Exclusive control of officer procurement and of the organization, training, and employment of the forces thus raised was exercised by the Federal Government. Applied initially only to the Army, this system eventually was extended to include the Navy and the Marine Corps.

"The conception rested upon three propositions. One of these, as old as mankind, is that every citizen is obligated to join in the common defense. The second, not readily agreed upon in the early days of the Republic, is that in a National emergency the authority of the National Government over its armed forces is paramount and exclusive. The third proposition is that local self-government is the fundamental basis of American democracy."

And the same report on page 10 thereof, in a paragraph entitled "Mistakes of the Civil War Draft," listed as one of those mistakes the following:

"Third, the Federal Government alone conducted the draft machinery. The local governments of States and counties were not made parties, either in action or in responsibility. Draft quotas were alloted from Washington to each Congressional district, which was a casual division of the National system and not an organized unit of local self-government. It was made to seem that the Federal Government was using its army to drag men away without regard to fundamental democratic processes."

I think he has simply, under the regulations as they now stand, reserved to himself the power personally to determine—by what rules, no one would know—this petitioner or any other person who sought a certificate of exemption—whether he was or was not entitled to it.

That, in my judgment, is what is described in the decisions as arbitrary and capricious, and I would say lack of due process and a lack of rule of reason.

I might mention another thing that influences me in connection with the decision of the local board on March 10 to revoke the certificate of non-residence is the fact that on the identical evidence, they granted three previous certificates.

 The only additional thing before the board on March 10th, was a letter from the State Director of March 1, 1944, the effect of which was to peremptorily suggest to the board that they recall and cancel petitioner's certificate of non-residence. The letter refers to a "mimeographed statement" of October 23, 1943. This statement was in evidence. It is unsigned and bears no caption or designation either as a "directive," "order," "memorandum to the local board," or any of the various other appellations given to the almost innumerable types of communications to local boards from state or national headquarters. It certainly was not a rule or regulation promulgated by the President or his delegee, the National Director of Selective Service. And the State Director is not empowered under the Act to promulgate rules or regulations nor to substitute his judgment for that of the local or appeal boards.

It must be kept in mind also that when each previous certificate was granted under the rules and regulations, the local board notified the Selective Service System of such action, and no objection was made. It must also be kept in mind that once before the State Director called for the file. It had the same evidence in it then as was in it on March 10th and as was in it on March 1st, when he wrote the letter. He called for it for review, and yet he sent it back, without objection to the board's action and with apparent approval.

My view is that it points up to no other conclusion than that the local board acted on March 10th without any supporting evidence and, I might say, in an arbitrary and capricious manner. And that tends to support the conclusion which I arrive at that the determination of the Director of Selective Service, if he had the power to make it on appeal, was arbitrary and capricious. He had the record of the granting of these certificates as they were granted. It was required that they be sent in, and they were sent in on each of the three previous occasions, and yet nothing was done about it, and he had no new or different evidence before him either.

I think that probably concludes any remarks I want to make in connection with the matter.

The stipulation shows that the answer in response to the government on the order to show cause would be deemed to be a return in response to a writ, and the Army has produced the body of the petitioner, so that I think probably we can dispense with the formalities that are ordinarily gone through in a preliminary way, and if counsel will prepare the writ, I will now order it to issue, directing the respondents in this case to discharge the petitioner from the Army of the United States.