## Application of MANNERFRID.

United States District Court
S. D. New York.
Nov. 29, 1951.

Jack Wasserman, Washington, D. C., Edward L. Dubroff, Brooklyn, N. Y., of counsel, for petitioner.

Edward J. Shaughnessy, Dist. Director, Immigration and Naturalization Service, New York City, Monroe Kroll, New York City, of counsel, for respondent.

**S. H. KAUFMAN, District Judge.**

Petitioner, a native and national of Sweden, filed this petition for naturalization pursuant to the provisions of 8 U.S.C.A. §§ 707(a) and 711.

Petitioner entered the United States as a temporary visitor for business on June 4, 1941. He remained in the United States continuously until his lawful admission for permanent residence on April 5, 1949. On March 15, 1943, petitioner executed DSS Form 301 (Application by Alien for Relief from Military Service) [1] and filed it with Local Board No. 31. Attached to the form was petitioner's letter, dated March 16, 1943, addressed to the Board, stating that he had conferred with Consul Hugo de Thamm of Sweden, who had informed him that, as a Swedish subject, petitioner had the right to file that application because of an agreement between the United States and Sweden. The letter further states that petitioner was in the United States only for the duration of the war and would return to Sweden as soon as the war was over, since he did not intend to become an American citizen; and further, that if he joined the American forces he would automatically become an American citizen, and as such would be a foreigner in his own country, and that as a foreigner in Sweden he would not be allowed to control any Swedish company or own real estate without permission, and that since he had considerable real estate holdings in Sweden and was sole owner of a factory in that country, he thought it best to claim exemption from military service as a neutral alien.

On April 5, 1949 he was lawfully admitted into the United States for permanent residence. On April 9, 1949 he was married to an American citizen, and on April 17, 1951 he filed this petition for naturalization. The Designated Naturalization Examiner recommends that the petition be denied, while the Commissioner of Immigration recommends that it be granted.

As is provided by statute, both recommendations have been submitted to the court. 8 U.S.C.A. § 733(c).

The Examiner bases his recommendation of denial on the fact that petitioner, on March 15, 1943, executed DSS Form 301 and that he was accordingly relieved from military service as a neutral alien.

It is the view of the Commissioner that the execution and filing by petitioner of DSS Form 301 was the result of a mistake and therefore petitioner was not bound by it.

It is argued on behalf of petitioner (1) that he did not knowingly waive his rights to citizenship; (2) that he was a temporary nonresident visitor and therefore not subject to the Selective Service Act, 50 U.S. C.A. Appendix, note preceding § 321; and (3) that the repeal of the Selective Training and Service Act of 1940, 50 U.S.C.A. Appendix, § 301 et seq. removed whatever disability may have existed by virtue of his having filed Form 301.

In arguing that the waiver of his right to citizenship was unintentional, petitioner seeks to bring himself within the purview of the ruling in Moser v. United States, 1951, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729. In that case, Moser sought exemption from military service without debarment from citizenship in the mistaken belief that a treaty between the United States and his native country (Switzerland) granted him an unconditional right of exemption. The Department of State apparently agreed that there was substance to Moser's claim and the claims of others in similar circumstances, since it arranged for a revised DSS Form 301, in which the express waiver of the right to citizenship contained in the original DSS Form 301, was deleted. This revised form was the one the applicant in the Moser case signed. In holding that he was not debarred from citizenship, the Supreme Court stated: "He was led to believe that he would not there-

---

1. The second paragraph of Form 301 declares: "I do hereby make application to be relieved from liability for training and service in the land or naval forces of the United States, under the Selective Training and Service Act of 1940, as amended, in accordance with the act of Congress, approved December 20, 1941. I understand that the making of this application to be relieved from such liability will debar me from becoming a citizen of the United States. * * *"

by lose his rights to citizenship. If he had known otherwise he would not have claimed exemption." 341 U.S. at page 46, 71 S.Ct. at page 556.

Petitioner is a man of higher than average intelligence and there is no doubt that he clearly understood that by claiming relief from liability for military service he would thereafter be debarred from becoming a citizen of the United States. In fact in his letter of March 16, 1943 he affirmatively stated that he never intended to make such an application. When petitioner signed DSS Form 301 he was fully aware that he was bartering the privilege of becoming an American citizen for the right to remain out of uniform. His only error was a lack of foresight, an inability to foresee that his attitude might change when World War II faded into history, and citizenship could be obtained without the necessity of exposing himself to the hazards of warfare.

■ On February 24, 1949 the Attorney General ordered that pre-examination be granted petitioner for the purpose of determining his admissibility to the United States for permanent residence. He found that petitioner "is not ineligible to citizenship or admission for permanent residence for having filed D.S.S. 301 under mistake * * *." Although this determination is entitled to some weight, it is not binding on the court. The statute contemplates that the court alone should have final responsibility for the granting or denying of a petition for naturalization. Petition of Zele, 2 Cir., 1942, 127 F.2d 578, 580.

■ There is no merit to the contention that petitioner was not subject to the Selective Training and Service Act of 1940 at the time he signed the waiver because he was not then "residing" in the United States. The Examiner, by implication, and the Commissioner, expressly, found that petitioner was residing in the United States within the meaning of the Act and the Regulations.

Petitioner relies for his contention that he was not subject to the Selective Service Act on the decision in McGrath v. Kristensen, 1950, 340 U.S. 162, 71 S.Ct. 224, 95 L.

Ed. 173. That case involved a Danish citizen who entered the United States as a temporary visitor and was unable to return to Denmark because of the outbreak of World War II. On February 7, 1942, Regulations were issued by the Director of Selective Service providing, in substance, that a male alien who had not declared his intention of becoming a citizen and who remained in the United States after May 16, 1942 or for more than three months following the date of his entry, whichever was the later, was a male person residing in the United States within the meaning of the Selective Training and Service Act of 1940. 340 U.S. at pages 173–174, 71 S.Ct. at pages 231–232. Kristensen filed his application for relief from Selective Service on March 30, 1942. The Court held in that case that the Regulations either made Kristensen, who had not declared his intention of becoming a citizen, a non-resident for the purpose of the Act between February 7 and May 17, 1942, or else that they were nondeterminative of his status in that period. Assuming that they were nondeterminative, the problem of defining the term "residing" (within the meaning of the Selective Service Act) devolved upon the Court. The Supreme Court refused to find "that a sojourn within our borders made necessary by the conditions of the times was residence within the meaning of the statute." 340 U.S. at page 176, 71 S.Ct. at page 232. The application for relief from military service having been filed while Kristensen was not subject to the provisions of the Act, he was not thereby rendered ineligible for citizenship.

Petitioner here arrived in the United States on June 4, 1941. When his application for relief from service was made he had been in the United States for almost two years, and he had not declared his intention of becoming a citizen. Under the Regulations there is no doubt that he was residing in the United States and was therefore subject to the Act when his DSS Form 301 was filed.

■ The final contention of petitioner, that the bar of ineligibility to citizenship failed to survive the repeal of the Selective Training and Service Act of 1940 cannot be

accepted. The disability placed upon an alien who files Form 301 outlives the repeal of the Act. Benzian v. Godwin, 2 Cir., 1948, 168 F.2d 952.

The petition must be denied. It is so ordered.