**GAY**

v.

**BROWNELL, Atty. Gen., et al.**

**Civ. No. 8324.**

United States District Court
D. Puerto Rico, San Juan Division.
March 31, 1954.

---

Tomas I. Nido, of Fiddler, Gonzalez & Nido, San Juan, P. R., for petitioner.

Ruben Rodriguez Antongiorgi, U. S. Atty., San Juan, P. R., for defendants.

RUIZ-NAZARIO, District Judge.

This action involves another instance where, as in Moser v. United States, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729, representations and behavior of government officials entrusted with the administration and execution of a statute induced an individual, seeking to preserve a vital legal right, to follow a course of action conducive to the total loss, by operation of the very statute thus administered, of the right which said individual was seeking to preserve; with the result that the precise course of action, thus taken by said individual, is now being invoked by the Government in support of its position that said individual voluntarily deprived himself of said vital right.

Plaintiff's situation appears to have substantially more merit than Moser's situation. Moser was not yet a citizen and he only enjoyed a mere expectancy to apply for citizenship which had not then ripened into any actual enforceable right. Plaintiff already was a naturalized American citizen, seeking to preserve his citizenship and reluctant to take any action which might result in deprivation of said citizenship. Moser had to take further positive steps to enjoy

some status or condition which, ultimately, would have entitled him to acquire the right to become a citizen. Plaintiff, as a naturalized American citizen, did not have to take any positive action whatsoever to reaffirm further his status as an American citizen, and all he had to do consisted in avoiding expatriation by his voluntary action or inaction. Thus in the case of Moser, his subsequent inaction towards the acquisition of citizenship would have deprived the representations and behaviour of the government officials of all importance, while in the present case, plaintiffs inaction, relying on the representations and behaviour of the government officials, is the cornerstone of the Government's claim that he expatriated himself.

Julio Gay, the plaintiff herein, was born in the city of Juncos, Commonwealth of Puerto Rico (then a territorial possession of the United States of America) on April 14, 1907. His parents had been born in France.

He was naturalized by this Court as an American citizen on August 8, 1928, pursuant to the provisions of Sections 5 and 5a of the Act of March 2, 1917, the then Organic Act of Puerto Rico, as amended March 4, 1927, 8 U.S.C.A. former Sections 5 and 5a,[1] 48 U.S.C.A. §§ 733 and 733a. Certificate of Naturalization No. 2758593, was then issued to him by the Clerk of this Court.

After being so naturalized as a citizen of the United States of America, of French parentage, he, on September 5, 1939 joined the French Army, upon the declaration by France of a state of war with Germany, and thereby lost his American citizenship by operation of law.

While serving in the French Army, he was taken and detained as a prisoner of war by Germany for a period of approximately four years, and thereafter escaped and returned to France on August 28, 1943.

On August 9, 1945 plaintiff, after complying with all the requirements of Sec. 323 of the Nationality Act of 1940, as then in force, Title 8 U.S.C.A. former Sec. 723,[2] reacquired his American citizenship. A certificate of repatriation, pursuant to Section 341(a) of the Nationality Act of 1940, 8 U.S.C.A. former Sec. 741(a) [3] was thereafter issued to him on May 13, 1947.

Meanwhile, on March 1, 1946 the Department of State, acting through the American Consul at Bordeaux, France, had issued to him, as an American citizen, Passport No. 22, Serial No. 111638, which entitled him to enter legally the United States, as such a citizen, as he did on March 23, 1946.

While in the United States, he continued to reside in Puerto Rico, his birthplace, where he owns agricultural lands and other properties, operates a sugar cane growing business, and his main financial interests have been at all times centered.

The above mentioned Passport No. 22, Serial No. FS111638 was used by plaintiff for a later trip he made to France, where he arrived on July 24, 1947.

In connection with said trip, he made a statement under oath, on record with the Department of State, in which he stated: "It is imperative for the deponent to leave for France during the coming month of May, for the following reasons: 1– *To represent in France the American firm Sears, Roebuck & Co. Inc. and to open an office for the sale and distribution of the merchandise of that establishment in France.*"

On March 2, 1948 he appeared before the American Consul in Paris, France, Agnes Schneider, and applied for a renewal of the aforesaid passport. In his application, Series No. 594, for said renewal, he stated under oath: "I represent the Sears Roebuck & Company, Philadelphia, Pa." and added that the *purpose of his visit* to France was "*from*

---

1. Now 8 U.S.C.A. § 1402.

2. Now 8 U.S.C.A. § 1438(a).

3. Now 8 U.S.C.A. § 1454(a).

*July 1947 to date in connection with business for Sears Roebuck & Company, Philadelphia, Pa.".* (Emphasis supplied.) The "Certificate of Action Taken" on said application for renewal, which appears on the back thereof, reads as follows:

"I Hereby Certify that the above passport was on March 2, 1948 renewed for two years until March 1, 1950." (Signed) "Agnes Schneider—American Consul—(Seal) Notarial Service No. 562".

Plaintiff's record with the Department of State, the United States Foreign Service and particularly with the American Consulate in Paris, France, showed that he was of French parentage.

On September 23, 1948, plaintiff again appeared before the same consulate at Paris, France, and filed, under oath, his application for registration, for himself and his two minor daughters as American citizens. In his said application it was stated, that his father and mother were both *born in France;* that his stay in France was for the purpose of *"Employment with Sears Roebuck and Company, Philadelphia, Pa.",* and that his legal residence in the United States "is at Juncos, Puerto Rico".

Said application was granted and registration approved on September 23, 1948 to *expire* on *September 23, 1950.*

Although the plaintiff's record with said Consulate showed that his parents had both been born in France, that plaintiff had arrived in said country on July 24, 1947, his said registration was made to expire on September 23, 1950, i. e. *over three years after his said date of arrival in France.*

The Department of State and the said American Consulate in Paris, France, being then familiar with the provisions of Sec. 404(b) of the Nationality Act of 1940, 8 U.S.C.A. former Sec. 804(b),[4] now invoked by the defendants, nevertheless approved said registration date to expire beyond the three years period provided in said subsection.

They showed no concern whatsoever for any implications which might arise from their said action, nor as to how the same could be honestly interpreted by the plaintiff, in view of his repeated statements under oath in the sense that his departure for France and his stay there since July 24, 1947 were for the purpose of representing an American commercial or business organization having its principal office or place of business in the United States (Sears Roebuck & Company, Philadelphia, Pa.) tending to show that he honestly believed he was comprised within the provisions of Sec. 406(b) of the said Nationality Act of 1940, 8 U.S.C.A. former Sec. 806(b),[5] which constituted an exception from the application to him of the provisions of Sec. 404(b) of said Act, 8 U.S.C.A. former Sec. 804(b).

While in France, plaintiff was appointed a sales representative for Delta Accounting Machine Co. of 387 Broadway, New York City, N. Y. and during his stay in said country he made substantial sales both for Sears Roebuck & Co. Inc. and for Delta Accounting Machine Co., receiving substantial compensation, by way of commissions, thereon.

On October 27, 1949, and while still in France, plaintiff, under French statutory provisions adopted therefor, expressly and officially renounced all allegiance which he might then have owed to the French Republic, as a national of that country by parentage, and such official renunciation and severance of bonds of allegiance to France was approved by a Decree of the President of the Council of Ministers of the Republic of France, issued on February 24, 1950 and promulgated on February 26, 1950 at page 2312 of the Official Journal of The Republic of France (Journal Official de la Republique Francaise).

It is with the above background in mind that the subsequent course of con-

4. Now 8 U.S.C.A. § 1484(a) (1).

5. Now 8 U.S.C.A. § 1485(4).

duct of the United States Government officials towards plaintiff, shall now be reviewed by the Court.

The three-year expatriation period fixed in Sec. 404(b) of the Act, 8 U.S.C.A. former Sec. 804(b), had not yet expired and plaintiff was still residing in France. He could have stayed there until July 23, 1950 without becoming expatriated.

On March 2, 1950, i. e. more than four months prior to the date on which he could become expatriated, he again visited the American Consulate in Paris, France, and signed an application for a new passport in substitution of the one which had been originally issued to him in 1946 (No. 22–Serial No. FS 111638) and had been renewed at the same Consulate for a period which had expired on the date previous to his said visit, i. e. March 1, 1950.

Prior to said visit, around February 1950, he had made several visits to the Consul, Agnes Schneider, at the American Embassy in Paris, with respect to the extension or renewal of his passport and in said conferences *his business activities in France* were discussed, he actually submitting, at the Consul's request, a report regarding said *business activities*. Among the *matters then discussed between him and said Consul* figured the actual nature of plaintiff's business connections with Sears, Roebuck & Co. and Delta Accounting Machine Co. (see Exhibits A and B, attached to the Stipulation as to Admission of Evidence filed Dec. 17, 1953), and it must be assumed, as said Consul states in her affidavit (Exh. B, mentioned supra) "that he submitted *satisfactory evidence to show that he was abroad as agent for the Delta Accounting Machine Company, 387 Broadway, New York, New York, and for Sears, Roebuck and Company of Philadelphia, Pennsylvania, working on a commission basis*", although no concrete evidence of his employment with the above mentioned American firms, appears *now* to be on file at the Embassy.

What happened next, in the light of the preceding background, justified plaintiff's subsequent course of action and cannot be now invoked in support of the government's position that plaintiff voluntarily expatriated himself.

What may be properly termed the crucial moment arrived on the aforesaid date, March 2, 1950, when plaintiff visited the Consulate to sign his application for a new passport.

His record with the Consulate already showed:

1– That he had been born in Puerto Rico.

2– That he was of French parentage.

3– That he at all times had claimed that the purpose of his voyage to France and his continuous stay there for a period already aggregating over two years and seven months, was to represent Sears Roebuck and Company, Philadelphia, Pa. in France, and that, while in France, he was appointed a sales representative for Delta Accounting Machine Co. of 387 Broadway, New York, N. Y., and that up to the time of said visit he had continued doing business for said firms in France, that said business was substantial, and that he was receiving substantial compensation therefrom, by way of commissions.

On the basis of said record and of the repeated statements and "satisfactory evidence" which must have been submitted by plaintiff (see affidavit of Agnes Schneider, Exh. A, mentioned supra), in his several visits to the Consulate, in connection with his aforementioned commercial representations and business activities in France in behalf of said two American firms, the Consul, by this time, must have been aware that plaintiff was proceeding under the impression that he qualified for the exception provided for in Sec. 406(b) of the Act, 8 U.S.C.A. former Sec. 806(b), that he could stay in France as long as he continued to do business for said firms without danger of becoming expatriated under Sec. 404(b) of the Act, 8 U.S.C.A. former Sec. 804(b), and that it was precisely because of that understanding that he was staying in France and ask-

ing for the renewal of his passport; much more so when plaintiff, in his application for said passport, signed on said date, March 2, 1950, made the following statement under oath:.

"I last left Puerto Rico on July 24, 1947, and *intend to return thereto within one year*". (Emphasis supplied.)

It is undeniable that by this statement plaintiff put Agnes Schneider, the American Consul at Paris, France, on notice that he wanted to stay in France much *beyond the three-year period for expatriation* provided by Sec. 404(b) of the Act, 8 U.S.C.A. former Sec. 804(b), and that his purpose in filing said application was to get a passport entitling him to remain abroad as an American citizen, until then, and return to and enter the United States thereafter as such American citizen.

Plaintiff states that the said Consul at no time mentioned to him the possible consequences of extending his passport for a period of time which went beyond the aforesaid three-year period of Sec. 404(b) of the Act, 8 U.S.C.A. former Sec. 804(b) (see Exh. A, mentioned supra) and said Consul admits that *"there was no reason to draw his* (plaintiff's) *attention to the provisions of Section 404(b) of that Act"* (the Nationality Act of 1940) (see her affidavit of October 16, 1953, Exh. B mentioned supra). (Emphasis supplied.)

In this connection, it is worth considering that, unless said Consul fully agreed with plaintiff's belief that he qualified for the exception contained in Sec. 406(b) of the Act, 8 U.S.C.A. former Sec. 806(b), she, in her dealings with plaintiff, particularly in connection with the issuance of the passport then applied for by him, would have failed to show any concern for the provisions of Sec. 501 of said Act, 8 U.S.C.A. former Sec. 901,[6] under which she would have been bound, barely four months thereafter, to certify in writing to the Department of State the facts establishing that she had reason to believe that plaintiff, while in France, had lost his American citizenship by virtue of the provisions of Sec. 404(b) of said Act, 8 U.S.C.A. former Sec. 804(b), and would not have anticipated to plaintiff at said time, (which she now admits she did not) that she would be bound to comply with the provisions of said section at the expiration of said period, and would have refused to extend to plaintiff a new passport to expire later than the date of expiration of the three years of continuous residence period provided in Sec. 404(b) of the Act, 8 U.S.C.A. § 804(b), i. e. beyond July 23, 1950.

Having before her plaintiff's said record with the Consulate, his said repeated statements as to his French parentage and as to the purpose of his 1947 voyage to, and his continuous stay in France for over two years and seven months, and the contents of his application for passport of March 2, 1950, in which he stated his intention to remain in France for one more year, the Consul, without advising plaintiff of any possible consequences whatsoever resulting from his stay there beyond July 23, 1950, nor stating to him that he failed to qualify for the exception accorded by Sec. 406 (b) of the Act, 8 U.S.C.A. former Sec. 806(b), or that he was not entitled to any other exception whatsoever, issued to plaintiff passport No. 1021 FS 4562, bearing the same date of said application and to expire on *March 2, 1952*, i. e. one year, seven months and five days beyond the expiration date of the period fixed in Sec. 404(b). Upon taking said action, the Consul moreover failed to inform plaintiff that she was acting under the belief, which the Consul *now states for the first time* was her belief (see Exh. B mentioned supra) that plaintiff's case was subject to the provisions of Section 404(c) of the Nationality Act of 1940, 8 U.S.C.A. former Sec. 804(c),[7] so that he could have the opportunity, in this connection, to ask the Consul merely to read plaintiff's numerous statements of record as to his French parentage, which

---

6. Now 8 U.S.C.A. § 1501.

7. Now 8 U.S.C.A. § 1484(a) (2).

obviously failed to support the conclusion that he could qualify under the provisions of said Sec. 404(c) and did not then warrant the Consul's *now disclosed* belief in said respect. By so failing to apprise the plaintiff that he had no basis for further entertaining the belief, passively encouraged theretofore by the Consulate's representations and behaviour, that he could remain in France for an additional year without subjecting himself to expatriation, and not affording him the opportunity to leave said country prior to July 23, 1950 and by going forward in issuing said passport, the aforesaid Consul further encouraged plaintiff's said belief.

Such passport was issued as a matter of course and subject to no conditions or limitations pertinent herein.

The record, in addition, shows that plaintiff's application for passport, on which said passport was issued on March 2, 1950, and which bore on its face the action thus taken by the aforesaid Consul, was referred to and received by the United States Department of State, Passport Division, on March 16, 1950.

Once he had said passport in his possession, plaintiff remained in France, as an American citizen, until November 1950, without being in any way, for any reason, or at any time, required to further appear at the Consulate, or without being molested or questioned in connection with his status as American citizen and as holder of the said passport, or as to any errors, mistakes or flaws in the action taken by the Consulate in the issuance thereof.

The record fails to show that at any time between July 23, 1950, date of expiration of the three-year limitation period fixed by Sec. 404(b) of the Act, 8 U.S.C.A. former Sec. 804(b), and November 1950, and while plaintiff still remained in France, the American Consul at Paris, France, might have sent to the Department of State any certificate of facts, pursuant to Sec. 501 of the Act, 8 U.S.C.A. former Sec. 901, in connection with any belief that said Consul might have entertained about plaintiff having lost his American citizenship under any provision of Subchapter IV of Title I of the Act, Former Subchapter IV of Chapter 11, Title 8 U.S.C.A.

Said record also fails to show that the Consul of the United States of America at Paris, France, who was the official entrusted with the duty of making any such certificate in writing under said Sec. 501 of the Act, 8 U.S.C.A. former Sec. 901, might have been directed to forward, or might have ever forwarded to plaintiff, while he still remained in France, a copy of any such certificate, as further provided in the cited section.

It also appears from the record that plaintiff on September 29, 1950, i. e. *over three months* after the expiration of the three years of continuous residence period fixed by Sec. 404(b) of the Act, again visited the United States Consulate at Paris, France, then filling in, signing and filing in said Consulate in his behalf and in behalf of his three minor children an application for registration, ("For use by person *whose status as a citizen has been approved* by the Department of State at Washington") (emphasis supplied), in which he stated that he had continuously resided in France from August 4 (sic) 1947 to date (Sept. 29, 1950) for the purpose of personal business, that his legal residence in the United States was Juncos, Puerto Rico; his occupation "Company Agent", and that he intended to return to the United States within three months to reside permanently. Said registration appears to have been approved by M. Helen Reeves, Vice Consul of the United States at Paris, France on September 29, 1950 and for a period to expire on August 4, 1952. At the bottom of said application appears the following statement:

"Evidence of citizenship submitted: *Applicant exhibited* Service *Passport No. 1021 issued* to him at this office on *March 2, 1950 which is valid until March 2, 1952;* Passport includes minor children, Marie Christine, Anne and George

J. J. M. (Signed) M. Helen Reeves.— Paris, France, Sept. 29, 1950." (Emphasis supplied.)

Thereafter, on November 1950, plaintiff left France for the United States travelling under his aforesaid passport No. 1021, of March 2, 1950, and he arrived at the port of New York on November 16, 1950, where he was legally admitted to entry as an American citizen.

From said date until the complaint in this action was filed, plaintiff continuously resided in the city of San Juan, Commonwealth of Puerto Rico, and was engaged in the active operation of his sugar cane growing business at a farm in the Municipality of Juncos, Puerto Rico, where he was born, and which was partly owned by him and partly under lease.

On May 31, 1951, plaintiff signed as applicant a "Petition for Issuance of Immigration Visa", for his mother Jeanne Gay del Santo, a citizen of France, to bring her to reside with him in Puerto Rico. He filed therefor, the form for use by United States citizens.

An investigation of his American citizenship was then conducted by the Immigration and Naturalization Service of the United States Department of Justice. In the process of said investigation he was required to produce documents and papers dealing with his former representation in France of Sears Roebuck & Co. and Delta Accounting Machine Co. and was further submitted to numerous and lengthy oral examinations by the Immigration Examiners. As a consequence of this investigation, the Acting District Director at Miami, Florida, having jurisdiction over Immigration and Naturalization matters in Puerto Rico, entered an order on June 27, 1952 denying plaintiff's said petition for issuance of immigration visa for his mother, because it had been *then* determined by said Immigration and Naturalization Service that plaintiff was not an American citizen entitled to sign said petition, because it had been *then* concluded that plaintiff had "lost his United States Nationality pursuant to the Nationality Act of 1940 by virtue of his absence from the United States from July 24, 1947 to November 16, 1950, during which time he resided in France, of which country he was formerly a national", he failing to qualify within the exception provided in Sec. 406(b) of the Act.

After unsuccessfully exhausting all administrative proceedings to revise the above ruling, plaintiff was notified on or about April 6, 1953 that deportation proceedings had been or were about to be brought against him and a warrant of arrest thereunder issued, on the basis of his then alleged self-expatriation as of August 1, 1950 and his corresponding illegal entry, as a citizen on November 16, 1950. He was thereafter requested to, and did, appear at the local office of the Naturalization and Immigration Service in San Juan, Puerto Rico, pursuant to warrant of arrest issued, and was subjected to preliminary examination thereunder for deporting him from the United States as an alien, by self-expatriation, illegally admitted for entry in the United States of America.

To prevent said expatriation and claim his right to be recognized as a naturalized citizen of the United States of America with all the rights and privileges attending said citizenship he brought this action against the Attorney General and the Secretary of State of the United States of America.

Defendants, in their answer, admit most of the allegations of the complaint, limiting themselves to adopting the position

(a) That plaintiff's 1947 voyage to France was not for the purpose of acting as representative of Sears Roebuck & Co. Inc. and to establish a business for the sale and distribution of some of the products of said American business firm in France;

(b) That even if he did, while in France, act as sales representative of the American business firm of Delta Accounting Machine Co., 387 Broadway, New York, N. Y. he did not receive any authority therefor;

'(c) That he would have made, while there, substantial sales for both Sears Roebuck & Co. Inc. and Delta Accounting Machine Co.;

(d) That though passport No. 1021, FS–4562, was issued to him on March 2, 1950, the defendants lack sufficient knowledge or information to form a belief as to the truth of plaintiff's allegations that said passport may have been issued to him as "Company Agent"; that plaintiff would have applied for the issuance of said new passport, upon the expiration of his former passport No. 22, from the American Consul at the Embassy of the United States in Paris, France, the Hon. Agnes Schneider, and *after having fully discussed and submitted, at the said Consul's request, a complete statement of his business activities in France:*

(e) That defendants are without knowledge and information to form a belief as to the truth of plaintiff's claims that

(1) his stay in France had been for the purposes alleged by him;

(2) he had never had the intention of relinquishing or abandoning his United States citizenship or of expatriating himself;

(3) his voluntary act of officially renouncing all bonds of allegiance to France refute any such intention;

(4) upon his applying for new passport *he was never advised that he could not stay in France after three years without losing his citizenship;*

(5) he remained in France during the period of time above mentioned, in *good faith* and without intention of expatriating himself;

(6) by his staying in France he never intended to reassume his French allegiance or citizenship;

(7) his *overstay* in France beyond the period of three years, *was not a voluntary act* within the purview of the statute;

(8) he had *no notice* or reason to anticipate the consequences that the defendant Attorney General would attach to the same, which was not coupled with any intent on his part, or with his concurrence, to transfer his allegiance to France; and

(9) his stay, under the above circumstances, did not give rise to any presumption of expatriation, and that, in any event, any such presumption has been conclusively rebutted by the affirmative acts of the plaintiff;

(f) plaintiff, at all times herein pertinent, may have been, and still be, a *bona fide* naturalized citizen of the United States; and

(g) defendants course of conduct may have caused great annoyance, trouble, work, and anxiety to plaintiff to such an extent that he has been deprived of his right to enjoy the protection accorded to the citizens of the United States.

The above issues went to trial, evidence was adduced and the case submitted by briefs already filed by the parties.

In addition to the facts hereinbefore, in this opinion found, the proof adduced at the trial further establishes other facts resulting from the evidence received at the investigation conducted by the Immigration and Naturalization Service of the United States Department of Justice, on plaintiff's petition of *May 31, 1951* for the issuance of an immigration visa for his mother, the hearings on which took place more than six months after plaintiff's return to the United States from France, i. e. between May 31, 1951 and June 27, 1952.

The additional facts which the court now finds from the records of said *a posteriori* hearing are the following:

Plaintiff was never designated the agent or representative of Sears Roebuck & Co. Inc. at Paris, France, though he continuously since his arrival there in July 1947, and until his departure on November 1950, made substantial sales and distribution of merchandise shipped by said firm, directly to customers contacted by plaintiff and whose orders had been mailed through plaintiff, he receiv-

ing therefor special commissions, at rates mutually agreed between him and said firm.

Before plaintiff left for France, on said occasion, he had corresponded with said firm, from Puerto Rico, suggesting the possibility of their doing business in France, through him as their agent or representative in said country. Said firm did not reject his said suggestion, and rather expressed a favorable reaction to the idea, encouraging plaintiff to go on with his plans, and though not making definite commitments to him in this respect, the firm let him believe that some sort of agency or representation could be granted to him if he was able to develop a substantial sale and distribution business for their products while in France.

Believing, in good faith, that said agency or representation would be coming to him while in France, plaintiff made his affidavit of March 19, 1947, in which he stated the purposes of his voyage to France, to be forwarded by the Executive Secretary of Puerto Rico to the Passport Division of the Department of State, to obtain a passport for plaintiff and his two daughters. In connection therewith the Department of State returned to the Governor of Puerto Rico, Passport No. 22 which had been issued to him on March 1, 1946, and authorized the Governor to amend said passport to include the name of plaintiff's other daughter, Anne, to validate the document for their proposed travel to France, and then deliver it to plaintiff. It was with this passport that plaintiff travelled to France in July 1947.

Plaintiff in his said affidavit did not state, as defendants claim, that the only and exclusive purpose of his voyage to France was for acting as a representative there for the American firm of Sears, Roebuck & Co. Inc. and to establish a business for the sale and distribution of some of the products of said firm in France. This was stated in said affidavit as only one of the purposes, and he included there two other purposes for his travel.

The Department of State and the United States Consul at Paris, France, had plain knowledge of the contents of his said affidavit, since it was submitted to said department in April 1947 and during all the time that the plaintiff remained in France and had his numerous dealings with said Consul to which ample reference has been made hereinbefore.

The Government, therefore, was not in any way deceived in this respect. It knew what plaintiff had claimed as one of the purposes of his said voyage. It could have investigated the truthfulness thereof, before having its Paris Consul incur in the representations and behaviour towards plaintiff which have been the subject of detailed comment hereinbefore. If said statement was insufficient in law to qualify plaintiff for the exception granted in Sec. 406(b) of the Act, 8 U.S.C.A. former Sec. 806(b), or if it was found in any part untrue, said official was under the duty of informing him so, setting him right in whatever misunderstanding he could be entertaining as respects his stay in France for a period longer than three years, particularly so, in view of the honest belief that plaintiff then had, of which said Consul was well aware, and which she passively encouraged, that on this account he was entitled to stay in France for a much longer period.

It must also be found, from the evidence at said *a posteriori* investigation, that plaintiff actually was the representative in Paris, France, of Delta Accounting Machine Co. from July 1949 to October 1950, as was certified to by said concern by its letter of August 7, 1951.

The Consul has admitted, in her affidavit of October 16, 1953 (Exh. B mentioned supra) that it must be assumed that plaintiff *"submitted satisfactory evidence* to show that he was abroad as agent for the Delta Accounting Machine Company, 387 Broadway, New York, New York, and for Sears, Roebuck and Company of Philadelphia, Pennsylvania, working on a commission basis", etc. She adds, in connection with Point (4): "I truthfully cannot recall any discus-

sions had with Mr. Gay regarding his connections with the Delta Accounting Machine Company and with Sears, Roebuck and Company *other than explained above*". (Emphasis supplied.)

Plaintiff testified on the witness stand that all the information and evidence by him so submitted to said Consul in connection with his business connections with said two firms and his activities for them in France, was exactly the same which was produced at the hearings of the investigation conducted between May 31, 1951 and June 27, 1952 by the Immigration and Naturalization Service, offered in evidence at the trial of this action.

Plaintiff, therefore, did not in any way mislead said Consul in this respect. She had before her all the information and evidence on which plaintiff relied for entertaining, in good faith, the belief that he fell within the exception of Sec. 406(b) of the Act, 8 U.S.C.A. former Sec. 806(b). She was familiar, or must have been familiar, on account of her position, with what the law requires in this respect or, if unfamiliar and untrained thereon, it must be assumed that she obtained the proper advice from the trained personnel of the Consulate, the Embassy or the Department of State, before she reached a conclusion which was so vital in the premises and acted on the basis thereof.

Plaintiff had the right to rely on her action, representations and behaviour.

He is not a lawyer and it does not appear that he had any one to advise him, much less that any necessity arose at any time for him to obtain legal help. The Consul never gave any signs that she was going to turn him down, or that she had any doubts whatsoever as to his right to the exception or about whether she was proceeding according to law or not, and plaintiff cannot be held bound to scrutinize the possibility of error in action favorable to him coming from the very officers entrusted by the government with the administration and execution of these statutes.

He had the lawful right to rely on said officers and not to be in any way expressly or impliedly deceived by them.

The Consul, in her said affidavit of October 16, 1953 (Exh. A mentioned supra), *now states*, for the first time, that

"Mr. Gay was not issued a new passport at this office on March 1950 on the basis of information submitted by him regarding his employment with an American firm, but a *passport was issued under the belief that this case was subject to the provisions of Section 404(c) of the Nationality Act of 1940.* If Mr. Gay's case had been considered under Section 404(b), he would have been required to execute an affidavit on Form 213 which would have been submitted to the Department with his Application and documentary evidence in support thereof". (Emphasis supplied.)

Later, she states:

"Point (5) Insofar as the records of the Embassy show that Mr. Gay's case *has always been considered under Section 404(c) of The Nationality Act of 1940,* there was no reason to draw his attention to the provisions of Section 404(b) of that Act. It is evident, therefore, that Mr. Gay's *case was considered from the beginning* as coming under Section 404(c) and not Section 404(b) of The Nationality Act of 1940." (Emphasis supplied.)

Exhibit I for plaintiff and defendant precisely consists of photostatic copies, duly certified to by the Secretary of State, of plaintiff's record with the American Embassy.

The Consul's said statement that such record "shows that Mr. Gay's case has always been considered under Section 404(c) of The Nationality Act of 1940" does not find the slightest support in said Exhibit I which is the very record cited by her. The Court has been unable to find therein a single document or even a note substantiating the above statement.

Moreover, the same record contains ample evidence denoting just the opposite. In most of the documents filed by plaintiff with the Consulate, all of which are included in said record, he invariably stated, under oath, that both his father and his mother were *born in France* and that he was born in Puerto Rico, a territorial possession of the United States. These repeated statements unequivocally meant that plaintiff was formerly a *national of France,* where he was living when the events to which said Consul refers, took place, and not therefore living *"in any other foreign state"* as provided in Section 404(c) of the Nationality Act of 1940, 8 U.S.C.A. former Sec. 804(c), which the Consul, in her said statement, pretends was always believed by the Embassy to be the Section under which plaintiff's case fell and had been considered.

In view of the omission, in said record (Exh. I), of all reference to the fact that plaintiff's case was ever treated under Sec. 404(c) of the Act, and of the inclusion therein of ample and repeated reference to the fact that plaintiff was of French parentage and, therefore, had been a national of France before becoming an American citizen, and that he was residing in said country when said Consul made the representations and took the action hereinbefore mentioned, and in view of the provisions of Section 404(c) of the Act, 8 U.S.C.A. former Sec. 804(c), it is impossible to believe, the Consul's aforesaid statements.

Moreover, the Consul admits plaintiff's claim that he was abroad as agent for the Delta Accounting Machine Co., 387 Broadway, New York, New York and for Sears, Roebuck and Company of Philadelphia, Pennsylvania, working on a commission basis, and it must be assumed that plaintiff submitted satisfactory evidence thereof. This information and satisfactory evidence was all immaterial for considering plaintiff's case under Sec. 404(c) of the Act, while it was absolutely essential in considering a claim for the exception granted by Sec. 406(b) of the Act.

The Court, therefore, gives no credit to the Consul's said statement that plaintiff's case was ever treated as one falling under Sec. 404(c) and not as one falling within Sec. 406(b), and finds that it was at all times treated and considered under the last cited section of the act, and so decided by the Consulate.

It could be alleged that the record strongly supports the inference that the American Consul at Paris, France, was quite confused in dealing with plaintiff's case. But even if this were conceded, there is no evidence whatsoever that plaintiff may have been in any way chargeable of having caused any such confusion, either by action or omission. He placed all his cards on the Consul's table. If she, or her staff, or the Embassy's staff, or the whole Department of State and their advisors failed to evaluate properly, the factual situation honestly submitted to them by plaintiff or failed to interpret the law correctly and thus misled plaintiff into acting as he did, plaintiff cannot be made the victim of any such confusion, as the defendants contend he must.

It has been firmly established that expatriation can be the consequence only of voluntary action. Savorgnan v. United States, 1950, 338 U.S. 491, 70 S.Ct. 292, 94 L.Ed. 287; Dos Reis ex rel. Camara v. Nicholls, 1 Cir., 1947, 161 F.2d 860; Doreau v. Marshal, 3 Cir., 1948, 170 F. 721; Perri v. Dulles, 3 Cir., 1953, 206 F.2d 586.

■ Defendants contend, and the Court agrees with them, that expatriation may result without any affirmative action on the part of the government, and by the mere inaction of the naturalized citizen.

But the mere inaction on the part of the naturalized citizen which may ultimately give rise to expatriation, must be one, in which free will, or voluntary action is present.

For instance, it could not be claimed that a minor, an incapacitated person, or one who is forced to act or fail to act

under duress, has acted or failed to act voluntarily.

Nor that a person has acted or failed to act *voluntarily* when he has been misled into it by a *bona fide* belief that he was entitled to do so, derived from representations and behaviour of the very party who invokes said action or failure of action to deprive said person from a valuable right.

Plaintiff herein falls within the last category.

Paraphrasing Moser v. United States, supra, 341 U.S. at page 46, 71 S.Ct. 553, 556, plaintiff "had asserted a right to exemption *without debarment from citizenship.* In response to the claims of" plaintiff "and in apparent acquiescence, our own Department of State" through our French Embassy and Consulate at Paris, France, acted favorably. Plaintiff *"had sought information and guidance from the highest authority to which he could turn"*, and was given what he had been asking. *"He* was led to believe that he would not thereby lose his" American "citizenship". "If he had known otherwise he would not have" remained in France beyond the three year period. "In justifiable reliance on this advice" and behaviour he remained in France, considering himself protected by the new passport thus issued to him, as an American citizen, for a period longer than said three years, and later returned to the United States, being duly admitted to entry, as such American citizen on the strength of said passport.

Plaintiff signed his application for a new passport to run beyond a period longer than the three years of continuous residence fixed by the statute "believing that he was not thereby precluded" from continuing exercising his rights as an American citizen and "had he known claiming the" exemption "would debar him from citizenship" and bring about his expatriation "he would not have claimed it, but would have elected to" leave France before said period expired. From Moser v. U. S., supra, 341 U.S. at page 45, 71 S.Ct. 553, 555.

Therefore, the Court must hold, as the Supreme Court did in Moser v. United States, supra, 341 U.S. at page 47, 71 S.Ct. 553, 556, that

█ Plaintiff "did not knowingly and intentionally waive his rights" as an American naturalized citizen, and did not voluntarily expatriate himself.

It is worth adding that the threatened deportation would be not only illegal but would cause the most severe hardship on plaintiff who, by the action he took, voluntarily and expressly, while in France, is forever debarred from becoming a national of said country, and who, although born in this Commonwealth of Puerto Rico, and having most of his property and financial interests centered here, would be also forever barred from staying in Puerto Rico, if the Court acceded to defendants' request, and would thus become a most vivid example of "The Man Without a Country".

The Court, therefore, arrives at the following conclusions of law:

1. Plaintiff Julio Gay, also known as Jules Jean Victor Gay's continuous stay in France from July 24, 1947 to November 1950 was not voluntary under the purview and intent of the Nationality Act of 1940.

2. Plaintiff Julio Gay, also known as Jules Jean Victor Gay, did not thereby lawfully expatriate himself under Sec. 404(b) of the Nationality Act of 1940, 8 U.S.C.A. former Sec. 804(b); or under any other provision thereof.

3. Plaintiff Julio Gay, also known as Jules Jean Victor Gay, lawfully entered the United States of America on November 16, 1950, as a naturalized citizen of the United States and his stay in this country since then has been at all times legal.

4. Plaintiff Julio Gay, also known as Jules Jean Victor Gay, is a naturalized citizen of the United States with all the rights and privileges attending said citizenship.

5. Defendants have no right, title or authority in law to deport plaintiff Julio Gay, also known as Jules Jean Victor

Gay, from the United States, and they and their agents, subordinates, representatives or servants, or any one acting under their instructions must be permanently restrained and enjoined from instituting or prosecuting or continuing to prosecute any proceedings for the purpose of deporting the plaintiff Julio Gay, also known as Jules Jean Victor Gay, from the United States, or from in any manner, interfering with his residence and citizenship within the United States of America.

Judgment will be entered accordingly.