## Browne Naturalization Case.

Argued May 1, 1962. Before MUSMANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Mabel G. Turner,* Assistant United States Attorney, with her *Drew J. T. O'Keefe,* United States Attorney, for appellant.

*Stephen J. McEwen, Jr.,* with him *McEwen & McEwen,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, May 21, 1962:

On February 25, 1953, Patrick Joachim Browne, a native, of Kanturk, County of Cork, Ireland, arrived in the United States, classified for permanent residence. On April 11, 1958, he filed a naturalization petition to become a citizen. The naturalization examiner recommended denial of the petition and on December 31, 1959, the Court of Common Pleas of Delaware County, entered a decree formally barring citizenship to the petitioner.

On July 27, 1960, Browne filed a new declaration of intention and on the same day enlisted in the Pennsylvania National Guard. He was ordered to active duty for training in a Federal status and served six months at Ft. Knox. Upon his return home he became a reservist and periodically participated in the official military training program.

On May 31, 1961, Judge SWENEY of the Delaware County court, held a hearing on Browne's petition to have the decree of December 31, 1959, set aside. On August 11, 1961, the court found that Browne was eligible for citizenship, and he took the oath on September 7, 1961. The Government has appealed.

The Government contends that Browne can never be a United States citizen because, it states, he voluntarily renounced that right when on June 11, 1953, he requested exemption from training or service in the American military forces. Section 315 of the Immigration and Nationality Act of June 27, 1952, 66 Stat. 242 (8 U.S.C.A. §1426) provides, inter alia, that "any alien who applies or has applied for exemption . . . from training or service in the Armed Forces . . . of the United States on the ground that he is an alien, and is or was relieved . . . from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States."

It is obvious that for a permanent resident in this country to be declared permanently ineligible for United States citizenship is a grave matter indeed. It is like telling someone who lives in the country that he may not fill his lungs to the utmost with fresh air. It must be a knell of doom constantly sounding in the ears of a permanent American resident that he may not breathe fully the air of liberty and opportunity which everybody else may enjoy. Thus, considering the solemn sanctions involved through application of the statute in question, it must be construed strictly.

Judge Hastie, United States Circuit Court Judge of the Third Circuit, well said that: ". . . the deprivation of the privilege of acquiring citizenship, which an alien in permanent residence normally enjoys, is a substantial penalty. A statute which attaches such a penalty to certain conduct *should be construed strictly to avoid an imposition which goes beyond the manifest intent of Congress.*" (Emphasis supplied) (*United States v. Rego*, 289 F. 2d 174.)

What are the facts? Browne arrived, as already stated, in the United States on February 25, 1953. Within a day or two after setting foot in this country he registered with the selective draft board in Lansdowne. Three or four months later he was notified by the draft board to appear for an examination. He presented himself to the board and asked for a deferment. He had gotten employment but his wages were meager and he desired to establish himself a little more solidly before going into military service. He made no attempt to avoid that service, he merely asked for a deferment for a short time so that he might have an opportunity to sink his roots deeper into the economic and social soil of this land. The deferment would not affect the security of the United States. The United States was not engaged in war. No one objected to Browne's request or in any way informed him that this request would make him a pariah in the country he had chosen for his permanent home. The draft board prepared for him a letter which would effectuate his intentions. The letter contained the sentence: "I, Patrick Joseph Browne, Alien Registration No. A 8446366 do hereby request a deferment and classification IV-C as a Treaty Alien."

The Government contends that by this statement, Browne brought himself within the provisions of Section 315 of the Immigration and Nationality Act, heretofore cited.

The first part of the letter read: "I, Patrick Joseph Browne, 800 West Cobbs Creek Parkway, Yeadon, Pa., SS No. 36-58-29-816, Alien Registration No. A 8446366 have read section 315 of the Immigration and Nationality Act as set forth below and fully understand same." There then followed the brief excerpt from Section 315 which has already been quoted in this Opinion. Nothing in that quotation refers to "classification IV-C".

If the letter signed by Browne is to be regarded as an impenetrable wall to bar Browne from United States citizenship, it must be a wall with no break or crevice. It is not such a barrier. There is nothing in the letter which says that Section 315 has anything to do with "classification IV-C." So far as the letter is concerned, the quoting of Section 315 no more applies to Browne's status than if it were a quotation from a statute prohibiting polygamy. Nor did anyone orally tell Browne that IV-C could be interpreted as a request for exemption. When asked what he understood by his request for deferment, he testified: "I understood I was going to be put back for a while and called later; that's what I understood at the time."

Referring again to Section 315, it will be seen that for the ax of permanent ineligibility for citizenship to fall, the subject must apply "for exemption from training or service in the Armed Forces . . . of the United States." The letter of June 11, 1953, which is the door which will open or permanently close Browne's way to citizenship makes no mention of request for exemption. In it Browne asks for deferment and deferment alone. No dictionary would ascribe to the word "deferment" the concept of exemption. Deferment means to put off, to delay. It is a postponement of the flowering of an event, not a killing of it in the bud. Exemption, on the contrary, means to be "Free, or released, from some liability to which others are subject;

excepted from the operation or burden of some law; released; free; clear; privileged; not subject to; not liable to." (Webster's International Dictionary).

Considering the irremediable penalty which accompanies a request for exemption, nothing less than the use of the word "exemption" or an unmistakable derivative thereof should deprive a United States resident of citizenship. To decide otherwise would be to put a premium on entrapment. Neither the laws nor the spirit of the laws of this country will countenance deceit or guile in treating with potential citizens of the United States. Congress never intended that anyone who comes to America should be ensnared into military service. Military service is a privilege, as well as a duty. Thus, to make it a subject of trickery or deception is to degrade the country and to make of a soldier a mercenary whose heart cannot be expected to beat in rhythm with the drums of uncompromising loyalty.

To bar a resident from citizenship it must be established that he was confronted with an honest choice between the Flag and permanent alienage. To deprive one of United States citizenship it must be established that he was made aware that it was within the scope of his intellectual decision and conscientious determination to decide whether he would remain in the United States wholly devoted to her institutions or whether he was to stand here only with one foot, the other still planted on the land from which he came. In the case of *Moser v. United States,* 341 U.S. 41, citizenship had been denied to the petitioner on the ground that he had claimed exemption from military service as a neutral alien during World War II. The Supreme Court of the United States reversed the denial, declaring that the subject had not had freedom of choice. The circumstances revealed that he had been misinformed as to his rights. Speaking for the

Court, Justice MINTON said: "Petitioner did not knowingly and intentionally waive his rights to citizenship. In fact, because of the misleading circumstances of this case, he never had an opportunity to make an intelligent election between the diametrically opposed courses required as a matter of strict law. Considering all the circumstances of the case, we think that to bar petitioner, nothing less than an intelligent waiver is required by elementary fairness. Johnson v. United States, 318 U.S. 189, 197. To hold otherwise would be to entrap petitioner."

To deny Browne citizenship in this case would be something less than "elementary fairness."

Other reasons given by the court below further substantiate the right of Patrick Joachim Browne to United States citizenship, and the order of the court below is therefore

Affirmed.

Mr. Justice COHEN concurs in the result.