**Adolf Otto FUCHS, Petitioner, Appellant,**

**v.**

**DISTRICT DIRECTOR, IMMIGRATION AND NATURALIZATION SERVICE, Respondent, Appellee.**

**No. 6225.**

United States Court of Appeals
First Circuit.

March 20, 1964.

Elmer Fried, New York City, with whom Fried & Mailman, New York City, was on brief, for appellant.

Frederick W. Faerber, Jr., Asst. U. S. Atty., with whom Raymond J. Pettine, U. S. Atty., was on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

This appeal from the denial by the district court of a petition for naturalization involves unusual facts, but a settled principle. The evidence, which was essentially undisputed, was as follows. Petitioner, a Swiss national, entered this country as a permanent resident in October 1952. In April 1953 he registered with his local draft board; in May he replied to its questionnaire, and in June he was classified by it as I–A. Thereupon he wrote the Swiss Legation in Washington and was informed of his right to claim exemption as a treaty alien, and that "they would write a letter to the United States government * * * and that this would take care of it." The Legation did in fact make a formal request for petitioner's exemption. Petitioner was nevertheless asked to report to his draft board. He there spoke to a Miss Manson, who told him that he was entitled to claim exemption, but that if he did not do so in writing on the form she handed him he could not receive it. The tendered form contained a reference to section 315 of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1426. Petitioner's recollection was that Miss Manson did not give him a copy of the statute, but he agreed that he received the impression that if he signed the form he would be debarred forever from becoming a citizen (hereinafter termed loss of rights) as provided by this statute. He testified that he told her he would rather be drafted than lose his rights. Whether in fact he told her this, it is admitted that he left, refusing to sign the form. Miss Manson noted on the application, which remained part of his file, "Did not sign. Given copy of Sec. 315 I & N Act '52. Said State Dept. said not necessary."

The then applicable Selective Service Regulations provided that a treaty alien should not be granted exemption unless he executed an application in the form presented to petitioner, or some other writing indicating knowledge on his part that the statutory consequence was the permanent loss of citizenship rights.

This, undoubtedly, was because of the ruling in Moser v. United States, 1951, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729, that if an applicant did not have such knowledge he would not lose his rights. Although petitioner had failed to sign, the Board thereafter classified him in IV–C, the exemption status, and so notified him. Some months later his file was reviewed by higher authority. The Board was informed that in the absence of petitioner's written claim for exemption showing knowledge of section 315 the IV–C classification was erroneous. It was instructed to write petitioner to submit a claim for exemption in proper form, and that if he failed to do so, to reclassify. The Board wrote petitioner, but neither its letter nor his reply indicated the effect of his claim upon his future citizenship rights. Nonetheless, the Board permitted his exempt classification to remain. The following year, in the ordinary course, he was classified as deferred because of age. Some years later petitioner married a United States citizen, and thereafter applied for citizenship.

■ It was stipulated at the hearing below that petitioner was qualified for citizenship in all respects, subject to the section 315 issue. Much time was spent as to whether petitioner had applied for exemption. It is clear that he did. We agree with the district court that he applied as a result of the Swiss Legation letter. But even if that were not an application, his personal letter to the Board, above referred to, was an application. The all-important question, however, was whether petitioner "knowingly and intentionally waive[d] his rights." Moser v. United States, supra, 341 U.S. at 47, 71 S.Ct. at 556, 95 L.Ed. 729. The government cites no case which has sought to distinguish Moser on the ground that the applicant was unreasonable in believing what he did. See cases collected in Petition of Koplin, D.C.D.Colo., 1962, 204 F.Supp. 33.

■ Although the district court in dismissing the petition concluded that petitioner had made a "knowing" choice be-

tween exemption and citizenship, this conclusion must be regarded as a mixed finding of fact and ruling of law, and must be viewed in the light of the subsidiary findings required of, and made by, the court. The significant subsidiary finding, which we regard as dispositive of the case, is that petitioner

> "stubbornly entertained the notion that he could claim exemption and still be eligible for citizenship at some later date, if he refrained from signing a claim of exemption that referred specifically to said Sec. 315. In this he was clearly in error."

■ The word "notion" derives from *notio* or *noscere* (know) and in its primary sense means belief. Although it may contain overtones that the belief is insufficiently, or even ill-founded, a concept reinforced in this case by the court's adjective "stubborn," this does not go to the point of indicating that the belief is not actually held. Reading the court's finding in its entirety it is clear that it used the word with this common meaning, fairly calling the shots exactly as it saw them. The case accordingly stands that while petitioner knew that Miss Manson had told him that he could not apply for an exemption without losing his citizenship rights, his belief was that she was mistaken. We see no basis for finding that he was not sincere in this belief, or even that the court thought so. Rather, we take it that the court felt he was unreasonable.

Even if the law should be that a belief was not sufficient to save the petitioner if it was unreasonable, we could not so characterize this one. The rationale of Moser is that aliens, even if they speak English, are entitled to full disclosure on which to predicate a "knowing" choice. The government's regulations were not merely for its records, but were an attempt to comply with this principle. Twice, here, the government failed. It is undisputed that petitioner refused to sign the form application when he learned that it would foreclose his citizenship. The notation made by Miss Manson of itself indicates that petitioner thought her position erroneous. Having been told flatly that he could not receive an exemption if he did not sign an application expressing a waiver, when, thereafter, he received the exemption without signing, we could not find it unreasonable for him to believe that someone in higher authority had agreed with him rather than with her. The subsequent correspondence between him and the Board, again not meeting the regulations, did not require a reasonable man to change this opinion. As the two Selective Service representatives themselves put it at the trial, the Board had been "a little generous" to him. The government argues that petitioner cannot eat his cake and have it. We think it more correct to say that the government could not generously offer him cake and then attach conditions after he had eaten it.

Judgment will be entered vacating the order of the District Court and directing the entry of an order granting naturalization.