## MOSER *v.* UNITED STATES.

No. 301.   Argued March 7, 1951.—Decided April 9, 1951.

*Jack Wasserman* and *Morris E. Vogel* argued the cause and filed a brief for petitioner.

*Stanley M. Silverberg* argued the cause for the United States.   With him on the brief were *Solicitor General Perlman, Assistant Attorney General McInerney* and *J. F. Bishop.*

Mr. Justice Minton delivered the opinion of the Court.

Petitioner, a native of Switzerland, was admitted to citizenship by the United States District Court for the Eastern District of New York on July 21, 1949.[1] The Court of Appeals reversed,[2] holding that petitioner was debarred from citizenship because he had claimed exemption from military service as a neutral alien during World War II. Important questions concerning the effect of treaty and statute upon the privilege of aliens to acquire citizenship are involved, and we granted certiorari.[3]

Petitioner first entered the United States in 1937. After a trip to Switzerland in 1940 for service in the Swiss Army, in which he held a commission, he returned to this country and married a United States citizen. He and his wife have three children, all born here.

Article II of the Treaty of 1850[4] between the United States and Switzerland provides that

"The citizens of one of the two countries, residing or established in the other, shall be free from personal military service . . . ."

Petitioner registered under Selective Service in 1940 and was classified III–A, based on dependency. When, on January 11, 1944, his Local Board in New York City reclassified him I–A, available for service, he sought the aid of the Legation of Switzerland in securing his deferment in accordance with the Treaty of 1850. At that time § 3 (a) of the Selective Training and Service Act of 1940, as amended,[5] provided for the exemption of neutral

---

[1] 85 F. Supp. 683.

[2] 182 F. 2d 734.

[3] 340 U. S. 910.

[4] 11 Stat. 587, 589.

[5] Section 3 (a) of the Act, 54 Stat. 885, as amended, 55 Stat. 845, 50 U. S. C. App. § 303 (a), provided in part:

"Except as otherwise provided in this Act, every male citizen of

aliens from military service, with the proviso that one who claimed exemption should thereafter be debarred from becoming a citizen of the United States. Petitioner, however, advised the Local Board that he had taken steps with the Swiss Legation "to be released unconditionally" from service under the Treaty.

Upon receiving petitioner's request for assistance, the Swiss Legation in Washington requested the Department of State that he be given an "unconditional release" from liability for service, "in conformity with" the Treaty. The Department referred the request to the Selective Service System, which replied that the Local Board had been instructed to inform petitioner that he might obtain a Revised Form 301 from the Swiss Legation to be used in claiming exemption. Selective Service Headquarters in Washington did so instruct the Director of Selective Service for New York City. On February 18, 1944, the Swiss Legation wrote petitioner that it had requested the Department of State to exempt him "in accordance with the provisions of Art. II, of the Treaty . . . ." The letter continued:

> "We are forwarding to you, herewith, two copies of DSS Form 301, *revised,* which kindly execute and file immediately with your Local Board. This action on your part is necessary in order to complete the exemption procedure; your Local Board, in accordance with

the United States, and every other male person residing in the United States . . . shall be liable for training and service in the land or naval forces of the United States: *Provided,* That any citizen or subject of a neutral country shall be relieved from liability for training and service under this Act if, prior to his induction into the land or naval forces, he has made application to be relieved from such liability in the manner prescribed by and in accordance with rules and regulations prescribed by the President, but any person who makes such application shall thereafter be debarred from becoming a citizen of the United States . . . ."

44

Selective Service regulations, as amended, will then classify you in Class IV–C.

"Please note that, through filing of DSS Form 301, revised, you will not waive your right to apply for American citizenship papers. The final decision regarding your naturalization will remain solely with the competent Naturalization Courts."

The Legation's emphasis in referring to "Form 301, *revised*" is not without significance. The pertinent regulations promulgated by the President [6] provided that to claim exemption an alien should file with his Local Board Form 301, which became known as DSS 301, "Application by Alien for Relief from Military Service." Above the signature line on this form there appeared the statement, in obvious reference to the proviso of § 3 (a): "I understand that the making of this application to be relieved from such liability will debar me from becoming a citizen of the United States." But shortly after § 3 (a) of the Act was amended to the content with which we here deal,[7] the Swiss Legation had protested to the Department of State that it was inconsistent with the treaty rights of Swiss citizens. And the Department had hastened to assure the Legation that the Government had no intention of abrogating treaty rights or privileges of Swiss nationals. The State Department, in conjunction with Selective Service Headquarters and the Swiss Legation, had then negotiated agreement upon a Revised Form 301 which omitted the waiver quoted above and stated simply: "I hereby apply for relief from liability for training and service in the land or naval forces of the United States." A footnote of the revised form quoted pertinent parts of § 3 (a).

[6] 32 CFR, 1943 Cum. Supp., § 622.43.
[7] See 55 Stat. 845; note 5, *supra*.

It was under these circumstances that petitioner signed a Revised Form 301 on February 26, 1944, and was classified IV–C by his Local Board. The Court of Appeals has accepted, as do we, the finding of the District Court that petitioner signed the application for exemption believing that he was not thereby precluded from citizenship, and that had he known claiming exemption would debar him from citizenship, he would not have claimed it, but would have elected to serve in the armed forces.

Is petitioner debarred from citizenship by reason of the claimed exemption?

The Treaty of 1850 with Switzerland was in full force in 1940 when the Selective Training and Service Act was passed. Standing alone, the Treaty provided for exemption of Swiss citizens from military service of the United States, and if that were all, petitioner would have been entitled to unqualified exemption. Section 3 (a) of the Act, while recognizing the immunity of citizens of neutral countries from service in our armed forces,[8] imposed the condition that neutral aliens residing here who claimed such immunity would be debarred from citizenship. That the statute unquestionably imposed a condition on exemption not found in the Treaty does not mean they are inconsistent. Not doubting that a treaty may be modified by a subsequent act of Congress,[9] it is not necessary to invoke such authority here, for we find in this congressionally imposed limitation on citizenship nothing inconsistent with the purposes and subject matter of the Treaty. The Treaty makes no provision respecting citizenship. On the contrary, it expressly provides that the privileges guaranteed by each country to resident citizens of the other "shall not extend to the exercise of political

---

[8] 4 Moore International Law Digest 52–53, 61.

[9] *Clark* v. *Allen,* 331 U. S. 503, 508–509; *Pigeon River Co.* v. *Cox,* 291 U. S. 138, 160; *Head Money Cases,* 112 U. S. 580, 597–599. Cf. *Cook* v. *United States,* 228 U. S. 102, 120.

46

rights." [10]   The qualifications for and limitations on the acquisition of United States citizenship are a political matter [11] which the Treaty did not presume to cover.

Thus, as a matter of law, the statute imposed a valid condition on the claim of a neutral alien for exemption; petitioner had a choice of exemption and no citizenship, or no exemption and citizenship.

But as we have already indicated, before petitioner signed the application for exemption, he had asserted a right to exemption without debarment from citizenship. In response to the claims of petitioner and others, and in apparent acquiescence, our Department of State had arranged for a revised procedure in claiming exemption. The express waiver of citizenship had been deleted.   Petitioner had sought information and guidance from the highest authority to which he could turn, and was advised to sign Revised Form 301.   He was led to believe that he would not thereby lose his rights to citizenship.   If he had known otherwise he would not have claimed exemption.   In justifiable reliance on this advice he signed the papers sent to him by the Legation.

We do not overlook the fact that the Revised Form 301 contained a footnote reference to the statutory provision, and that the Legation wrote petitioner, "you will not waive your right to apply for American citizenship papers." The footnote might have given pause to a trained lawyer. A lawyer might have speculated on the possible innuendoes in the use of the phrase "right to apply," as opposed to "right to obtain."   But these are minor distractions in a total setting which understandably lulled *this* petitioner into misconception of the legal consequences of applying for exemption.

---

[10] 11 Stat. 587, 588.

[11] U. S. Const., Art. I, § 8, cl. 4; *United States* v. *Macintosh,* 283 U. S. 605, 615; *United States* v. *Schwimmer,* 279 U. S. 644, 649; *Zartarian* v. *Billings,* 204 U. S. 170, 175.

Nor did petitioner sign one thing and claim another, as in *Savorgnan* v. *United States*, 338 U. S. 491. Since the Revised Form 301 contained no waiver, what he signed was entirely consistent with what he believed and claimed.

There is no need to evaluate these circumstances on the basis of any estoppel of the Government or the power of the Swiss Legation to bind the United States by its advice to petitioner. Petitioner did not knowingly and intentionally waive his rights to citizenship. In fact, because of the misleading circumstances of this case, he never had an opportunity to make an intelligent election between the diametrically opposed courses required as a matter of strict law. Considering all the circumstances of the case, we think that to bar petitioner, nothing less than an intelligent waiver is required by elementary fairness. *Johnson* v. *United States*, 318 U. S. 189, 197. To hold otherwise would be to entrap petitioner.

The judgment of the Court of Appeals is

*Reversed.*

Mr. Justice Douglas concurs in the result.

Mr. Justice Black and Mr. Justice Frankfurter agree with the Court's decision and opinion that Moser did not waive his rights of citizenship. Questions regarding the scope of the Treaty of 1850 and the bearing of the Selective Service Act of 1940 on the Treaty are therefore not reached and should not be considered.