## MANNERFRID v. UNITED STATES.
### No. 45, Docket 22434.

United States Court of Appeals
Second Circuit.

Argued Nov. 6, 1952.

Decided Dec. 8, 1952.

Jack Wasserman, Washington, D. C., Edward L. Dubroff, Brooklyn, N. Y., of counsel, for appellant.

John M. Foley, New York City, Myles J. Lane, U. S. Atty. for Southern District of New York, New York City, Louis

Steinberg, District Counsel, Immigration and Naturalization Service, United States Department of Justice, New York City, Ralph Farb, Attorney, Immigration and Naturalization Service, United States Department of Justice, New York City, of counsel, for appellee.

Before SWAN, Chief Judge, and L. HAND and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

This case comes up upon appeal from an order denying the petition for naturalization of the petitioner, Mannerfrid. The ground of the denial was that, while he was in this country, he claimed exemption from military service and that by so doing he forfeited his right to become a citizen. Mannerfrid, a Swede, came to the United States as a business visitor in 1941, and obtained successive extensions of his time to remain as such until (by steps not relevant to this appeal) he was admitted as a permanent resident in April 1949. On March 15, 1943, he signed and filed with his Local Board an application for exemption from military service, a part of which was as follows: "I understand that the making of this application * * * will debar me from becoming a citizen of the United States." He married an American in 1949, and filed his petition for naturalization in 1951. As part of his application for exemption he had filed a letter addressed to the board, in which he said that he would "go back to Sweden * * as soon as the war is over, and, as I do not intend to become an American citizen, my friend, Consul Hugo de Thamm, advised me to file above application. I also want to state that, if I would not have filed the application and joined the American forces, I would automatically have become a United States citizen, and as a United States citizen I would be a foreigner in my own country and as a foreigner I would not be allowed to control any Swedish company or own real estate without certain permissions. As I have quite a large holding of real estate in Sweden and am sole owner of Henrik Mannerfrid

Aktiebolag, I thought it is the best to file the 'Application by Alien for Relief from Military Service.' If Sweden should become involved into the war, the whole matter changes, and I should be obliged to be able to withdraw this application * * * and reconsider this question, after I have been advised by my Consulate here."

Section 3(a) of the Selective Training and Service Act of 1940[1] subjected to military service, not only all male citizens, but every "male person residing in the United States"; but it did not define what "residing" meant. On February 7, 1942, the Director of Selective Service promulgated Regulations § 611.12 and § 611.13, the purport of which was that every male alien then in the country, or entering it thereafter, should be deemed to be "residing" here, if before May 16, 1942, or within three months after his entry, whichever were later, he did not file an application to have his "residence" determined. Mannerfrid had therefore the period between February 7 and May 16, 1942, to file such an application, and if these regulations were valid, he was a "male alien residing" here, because he failed to do so; and it followed that he would be debarred from ever becoming a citizen, if he ever claimed exemption from military service as he did. The first question therefore is whether these regulations were valid as a reasonable implementation of the statute. In McGrath v. Kristensen, 340 U.S. 162, 71 S.Ct. 224, 95 L.Ed. 173, the Supreme Court found it unnecessary to decide this point because the alien had claimed exemption between February 7 and May 17, 1942, at a time when he therefore still had an opportunity to apply for the determination of his residence. Thus the forfeiture of his right to citizenship that the Act imposes upon a claim for exemption by a resident alien, had to be determined without resort to the regulations and by trial as an issue in the naturalization proceeding. In Benzian v. Godwin, 2 Cir., 168 F.2d 952, we also found it unnecessary to decide the point,

[1] Section 303(a), Title 50 U.S.C.Appendix.

because, although the alien had indeed filed an application for determination of his residence during the time when the amended statute permitted him to do so, the Local Board had decided that he was a resident. If on the other hand the regulations were invalid, there were no regulations touching residence, and the alien had not proved nonresidence, and could not do so, because the Attorney General had ruled that all sojourners were residents. Now that the Supreme Court has overruled this ruling of the Attorney General, and it appears that there are sojourners who are not "residents," it has become necessary to decide whether the regulations in question are valid in a case like that at bar.

■ We think that Regulation § 611.13 is valid. The Director, as delegate of the President, was called upon to determine who of those sojourning in the country "resided" here, an inquiry which presupposed a hearing in each case. Since it was practically impossible for him to seek out every alien, it was reasonable to require any, who wished to be classed as non-residents, to appear and present their evidence to the Local Boards—§ 611.22—: especially as he added an appeal to the Director—§ 611.23. This afforded enough protection and left, as the only possible objection to the Regulation, the adequacy of the notice that a failure to apply for a "Certificate" would determine the alien's right. Section 641.1 undertakes to charge all persons, whether registrants or not, with notice of the "requirements" of the Act; and, although we do not wish to intimate that it should be limited to registrants, it is enough in the case before us that Mannerfrid had registered under § 611.1(d). Having once in this way consciously subjected himself to the draft, it was incumbent upon him to keep informed of any conditions attached to any claim for exemption before he undertook to press one. Therefore, if he is to escape the condition that the Act imposed upon his exemption, he must point to some excuse; and he says that he has one in the decision of the Supreme Court in Moser v. United States, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729.

■ In that case Moser, a Swiss, had sought the help of the Swiss Legation in Washington, to secure his exemption from service "unconditionally." Through the mediation of the Department of State the Director of the Selective Service was induced to prepare a "revised form" of the claim for exemption which omitted the clause declaring that the claimant "recognized" that exemption would "debar" him from citizenship, although it did retain a footnote saying that the effect of claiming exemption upon the claimant's right to apply for citizenship would have to be decided by the courts if the question arose. The Swiss Legation wrote to Moser, however, assuring him that an application under the "revised form" would not debar him, and, relying upon that, Moser used the claim to obtain exemption. When the case was before us, we held—Petition of Moser, 182 F.2d 734—that although by claiming exemption under the "revised form" Moser had not "waived" his right to be naturalized, the United States might nevertheless forfeit it because § 3(a) so provided; and that it was no excuse that Moser did not understand that this would be the effect of his claim. But the Supreme Court said "No"; it was enough, they thought, that Moser did not "waive his rights to citizenship" and that "he never had an opportunity to make an intelligent election between the diametrically opposed courses required as a matter of strict law," 341 U.S. at page 47, 71 S.Ct. at page 556. It follows that § 3(a) does not make a claim for exemption an absolute bar to naturalization; and that it will not be so, if the alien has been misled even by a third person (as Moser was by the Swiss Legation), if he has been so deprived of a fair chance to make an intelligent choice between exemption and the forfeiture. In the case at bar Mannerfrid was not deceived as to the effect of his claim; he knew that it would forfeit his right to be naturalized. What he did not understand was that military service would not forfeit his Swedish allegiance or make him a citizen of the United States; and, if he had been correctly informed as to that, he would not have claimed exemp-

tion. We shall take it that it was this mistake that induced him to make the claim; and such a situation, when it arises between individuals, which courts usually call a "collateral mistake," is, as everyone knows, at times a ground for equitable relief. However, we do not believe that the decision of the Court in Moser v. United States, supra, should be read as giving relief for that kind of mistake in these circumstances. Assuming, as we must, that the statute does not in all circumstances charge an alien to construe it aright at his peril, we cannot believe that the Court would extend the excuse to cases where, although he knows that the claim will forfeit his right, he is induced to make it because he is mistaken as to what will be the consequences of not making it. We concede that that would be no more than a further step of the lenity that the Court exercised in Moser v. United States, supra, and that the difference is one of degree; but that is so often the determining factor in situations of this kind, that we need not support its propriety if the difference in degree be wide enough. We can say no more than that we do not believe that Congress would have tolerated the necessary laxity in this instance.

■ Mannerfrid also argues that the repeal of the Act removed any disability imposed upon his requiring citizenship. In answer we need refer only to Benzian v. Godwin, supra, 168 F.2d 952, 958 and Machado v. McGrath, 90 U.S.App.D.C. 70, 193 F.2d 706, 709.

Order affirmed.