240 F.2d 25
 Mehmet Sabahittin GIZ, Appellant,
v.
Herbert BROWNELL, Jr., Attorney General of the United States, Appellee.
Remzi GURCAY, Appellant,
v.
Herbert BROWNELL, Jr., Attorney General of the United States, Appellee.
Ekmel MORAN, Appellant,
v.
Herbert BROWNELL, Jr., Attorney General of the United States, Appellee.
 No. 12839.
 No. 12873.
 No. 13043.
 United States Court of Appeals District of Columbia Circuit.
 Argued October 10, 1956.
 Decided December 13, 1956.
 
 Mr. David Carliner, Washington, D. C., with whom Mr. Jack Wasserman, Washington, D. C., was on the briefs, for appellants.
 Mr. Richard J. Snider, Asst. U. S. Atty., was on the briefs and argued for appellee.
 In No. 12839 Messrs. Oliver Gasch, U. S. Atty., and Lewis Carroll and Robert L. Toomey, Asst. U. S. Attys., were also on the brief for appellee, and Mr. Leo A. Rover, U. S. Atty. at the time the record was filed, entered an appearance for appellee.
 In No. 12873 Messrs. Leo A. Rover, U. S. Atty. at the time the brief was filed, and Lewis Carroll, Asst. U. S. Atty., were also on the brief for appellee.
 In No. 13043 Messrs. Oliver Gasch, U. S. Atty., and Lewis Carroll, Asst. U. S. Atty., were also on the brief for appellee, and Mr. Leo A. Rover, U. S. Atty. at the time the record was filed, entered an appearance for appellee.
 Before BAZELON, DANAHER and BASTIAN, Circuit Judges.
 BAZELON, Circuit Judge.
 
 
 1
 Section 3(a) of the Selective Service Act of 1940, 50 U.S.C.App. § 303(a) (1946),* makes all aliens "residing in the United States" liable for military service. It provides, however, that any citizen of a neutral nation may be relieved from service upon application (Form DSS-301), and that persons thus relieved will thereafter be barred from citizenship. Regulation 611.21 (32 C.F.R. 611.21) promulgated thereunder provided for determination of non-residence upon filing application (Form DSS-302) within three months after date of entry or after becoming liable for service, whichever was later. This was supplemented by 611.21-1 (32 C.F.R. 611.21-1) on June 27, 1945, permitting application to be filed after three months.
 
 
 2
 In these three cases, appellants, Turkish citizens who were in the United States pursuant to student non-immigration visas under § 4(e) of the Immigration Act of 1924, claimed draft exemption as neutral aliens. Under § 212(a) (22) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1182(a) (22) (1952), persons ineligible for citizenship are ineligible for permanent entry immigration visas. The Board of Immigration Appeals, in deportation proceedings, ruled that appellants were ineligible for citizenship by reason of their claims for draft exemption and ordered their departure. Appellants challenged this administrative action in these declaratory judgment suits. Judgments were allowed against them.[1] These appeals followed.
 
 No. 12873
 
 3
 Appellant Gurcay entered the United States in 1940 on a student's visa and registered under the Selective Service Act in 1942. He claimed draft exemption as a neutral alien on June 3, 1942, and failed to apply for a determination of non-residence. The effect of such failure, we noted in Machado v. McGrath, 1951, 90 U.S.App.D.C. 70, 193 F.2d 706, certiorari denied, 1952, 342 U.S. 948, 72 S.Ct. 557, 96 L.Ed. 705, is that the alien's status as an alien "residing in the United States" may be taken as confessed for purposes of § 3(a) of the Selective Service Act.[2]
 
 
 4
 Appellant says the regulations should not operate in this fashion against him because his election not to serve was not a matter of free choice but was compelled by his allegiance to Turkey as a reserve officer in its army. But we do not see how this allegiance precluded him from seeking a determination of nonresidence, the remedy provided by the regulations.
 
 
 5
 Finally appellant argues (as do the appellants in Nos. 12839 and 13043) that his efforts to enter our armed forces, after Turkey abandoned its neutrality in 1945 and became a co-belligerent, remove the statutory bar to citizenship. His argument in this respect is even weaker than that in Machado where the alien sought to withdraw his exemption claim and enlist in the United States Army before his country became a cobelligerent. 90 U.S.App.D.C. at pages 71-72, 193 F.2d at page 707. Our holding in Machado that the statutory bar to citizenship is not thus removed, 90 U.S. App.D.C. at page 74, 193 F.2d at page 710, applies a fortiori here.
 
 No. 13043
 
 6
 Appellant Moran entered the United States in March 1941 on a student's visa which was extended to, but not beyond, February 24, 1944. He registered in August 1942 and claimed draft exemption on January 5, 1943. On August 20, 1945, after deportation proceedings had been instituted against him for overstaying his visa, he filed an "Application for Determination of Residence." It does not appear that this application was ever considered or acted upon. In these circumstances, appellant's status as an alien "residing in the United States" may be taken as confessed under the regulations. Machado v. McGrath, supra; Mannerfrid v. United States, supra note 2.
 
 No. 12839
 
 7
 Appellant Giz entered the United States in 1939 on a student's visa and remained in a lawful student status until July 21, 1945. In 1940 he registered with his local draft board. He claimed draft exemption December 31, 1942. In June 1944, however, he filed an application for a determination of non-residence. Notwithstanding his failure to file within the time prescribed by the regulations then in effect, the draft board considered the application on its merits before denying it.
 
 
 8
 My colleagues are of the view that, notwithstanding such consideration, Giz' status, like that of the other two appellants, as an alien "residing in the United States" may be taken as confessed for the purpose of § 3(a) of the Selective Service Act. This view, with which I disagree, is fully stated in Judge DANAHER'S separate opinion herein. For reasons noted in the footnote,[3] I would reverse and remand for further administrative proceedings.
 
 
 9
 As another ground for avoiding the bar of ineligibility, Giz alleges that he claimed draft exemption under mistake. He says that he signed the claim for exemption at the request of the chief clerk of the draft board and hence did not have the "`opportunity to make an intelligent election' between being subject to the draft on the one hand, and being exempt but losing the right to become a citizen on the other." Machado v. McGrath, 90 U.S.App.D.C. at page 74, 193 F.2d at page 709, citing Moser v. United States, 1951, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729. We find no basis in this record for disturbing appellee's adverse factual determination. See Mannerfrid v. United States, supra.
 
 
 10
 No. 12873 affirmed.
 
 
 11
 No. 13043 affirmed.
 
 
 
 Notes:
 
 
 *
 Now Universal Military Training and Service Act, 50 U.S.C.A.Appendix, § 454
 
 
 [1]
 In Nos. 12873 and 13043 by summary judgment; in No. 12839 after trial
 
 
 [2]
 See also Mannerfrid v. United States, 2 Cir., 1952, 200 F.2d 730, certiorari denied 1953, 345 U.S. 918, 73 S.Ct. 729, 97 L.Ed. 1351
 
 
 [3]
 Although Giz' application was filed late, it was considered on its merits. Hence the regulations' timely filing requirements must be deemed to have been waived. And this accords with Selective Service policy followed even before the time for filing was extended by supplementation of the regulations in 1945. See Problems of Selective Service (1952) Text p. 107 and Appendices A-C p. 40; and 32 C.F.R. 611.29(b)
 From all that appears in this record, in passing on the merits of the application the Director of Selective Service based his determination that appellant was "residing in the United States" solely upon the applicant's lawful status as a temporary student visitor. On that basis, I think the Supreme Court's decision in McGrath v. Kristensen, 1950, 340 U.S. 162, 71 S.Ct. 224, 95 L.Ed. 173, especially the concurring opinion of Mr. Justice Jackson, requires us to hold that determination erroneous as a matter of law. Such an error, in my view, does not bind the Immigration Service. Ex parte Ghosh, D.C.S.D.Cal.1944, 58 F. Supp. 851.
 But I do not think this concludes the matter. For even as to an alien in the United States on a student's visa, there may be other circumstances showing a purpose to reside here. The Immigration Service should have the opportunity of determining whether such circumstances exist here. To that end I would reverse and remand to the District Court with directions to refer the case back to the appellee for further administrative proceedings.
 
 
 
 12
 DANAHER, Circuit Judge, with whom Circuit Judge BASTIAN concurs.
 
 
 13
 We concur in Judge BAZELON'S opinion as to No. 12873 — Gurcay v. Brownell and No. 13043 — Moran v. Brownell. We agree with Judge Bazelon's disposition of the claim by Giz that he sought "draft exemption under mistake." As to the other aspects of the question presented in No. 12839 — Giz v. Brownell, we prefer to state our position as will be developed.
 
 
 14
 Giz, a citizen of Turkey, entered the United States on September 9, 1939, as a student. After studying English in Massachusetts, he entered the University of California as a pre-dental student. In 1940 he registered with the local draft board at Berkeley, California. He was graduated from the University in October 1944 with a degree in dentistry and thereafter took a postgraduate course in dental surgery. His visa expired in July 1945, after he had completed his studies and had concluded his professional examination. He did not seek an extension of his visa nor did he depart from the United States. Instead, he moved to San Diego, California, and opened an office for the practice of dentistry. In 1947 deportation proceedings were instituted because Giz had overstayed his visa. After several hearings, and a determination that Giz should be excluded from admission to the United States, he appealed to the Board of Immigration Appeals. The Board held that Giz was statutorily ineligible for citizenship and, accordingly, ineligible for suspension of deportation. Although he was granted voluntary departure, he filed an action for declaratory relief claiming, notably, that he had not been "residing in" the United States within the meaning of § 3(a) of the Selective Training and Service Act of 1940.[1] After trial and oral argument, Judge McGuire entered findings of fact and conclusions of law and ordered judgment for the defendant. Thereupon, Giz appealed.
 
 
 15
 The Selective Training and Service Act of 1940 by § 3(a) required the registration of every male citizen of the United States and every other male person "residing in the United States." It provided further that, despite registration, a citizen of a neutral country was to be relieved from liability for service upon his making application for such relief "in accordance with the rules and regulations prescribed by the President." Any such person who filed such an application by statute was thereafter "debarred from becoming a citizen of the United States." The Act did not define who was a male person "residing in" the United States.
 
 
 16
 The Regulations as promulgated have been found to be valid.[2] Section 611.12[3] prescribed "when a non-declarant alien is residing in the United States." Since Giz had not declared his intention to become a citizen of the United States, pursuant to the statute and to this regulation without more, he was deemed to be "residing in" the United States[4] unless he fell into an excepted category as provided by § 611.13.
 
 
 17
 Pursuant to the Regulations,[5] Giz could have been deemed not to be "residing in the United States" if, by May 16, 1942, he had filed an Alien's Application for Determination of Residence on Form 302. But he filed no such application by May 16, 1942. Indeed, not until May 31, 1944, did he file Form 302. Thus, as we are saying concerning Gurcay and Moran, the status of Giz as an alien "residing in the United States" must be taken as confessed for the purposes of § 3(a) of the Selective Training and Service Act and of the Immigration and Nationality Act.[6] But the law and the circumstances determining his status for the purposes of this case do not stop there.
 
 
 18
 From 1940 on, having registered as he was bound to do, Giz was charged with notice as to the requirements of the law. It was "incumbent upon him to keep informed of any conditions attached to any claim for exemption before he undertook to press one."[7] Yet, ten months after the promulgation of the Regulations, and seven months after his status had already become fixed, he filed, not Form 302, but Form 301. Although he was already classified 4-C as a citizen of a neutral country, he asked for complete exemption from military service. On December 31, 1942, he signed and filed with the local draft board his application containing the statement:
 
 
 19
 "I do hereby make application to be relieved from liability for training and service in the land or naval forces of the United States, under the Selective Training and Service Act of 1940, in accordance with the Act of Congress, approved December 20, 1941. I understand that the making of this application to be relieved from such liability will debar me from becoming a citizen of the United States. I have not filed a declaration of intention to become a citizen of the United States." (Emphasis supplied.)
 
 
 20
 He brought himself squarely within the provision of § 3(a) of the Selective Training and Service Act, and thereby he became "debarred from becoming a citizen of the United States." He not only sought and received the benefits and the protection of life in the United States, he pursued and completed his professional education while tens of thousands of others responded to the nation's wartime needs. But not Giz. It is possible to conclude, irrespective of the Board of Immigration Appeals, that, without regard to any other consideration whatever, he intended to remain safe and secure while carrying out his own purposes. Even when his visa had expired, he moved to a different city and opened an office for the practice of his profession. Indeed, when applying for suspension of deportation in 1950, he claimed he had resided in the United States for more than seven years and was so residing on July 1, 1948. Quite apart from differing connotations of legal definitions of "residing," the continuing purpose of Giz throughout the past seventeen years seems clear enough, and the fact is that he is still here.
 
 
 21
 But the courts have now been asked to say that he was a non-resident. We are asked to decide that his case differs from those of Gurcay and Moran because, as of May 31, 1944, he filed an application for Determination of Residence, Form 302. We do not understand the reference to a "waiver" in terms of a timely filing. Although Giz had already forfeited his non-resident status, if he had one up to May 16, 1942, just as did Gurcay and Moran, the Director nonetheless gave Giz the benefit of consideration. Giz actually, by the additional consideration of his case, received more, not less, than was his due. We see no basis here upon which it can be urged that Giz was harmed on that account, or that he was treated any differently than was warranted by the facts and the law. "In all cases where an application was not filed within the 90 days, the Director of Selective Service determined whether or not the alien was `residing in the United States.' In such connection, he also had the authority to cancel the registration of any non-declarant alien and to issue or authorize the issuance of an Alien's Certificate of Non-residence (DSS Form 303)."[8] The Director affirmed in 1944 what the law had already determined, that Giz had been a resident for the purposes of the Act, and a Certificate of Non-residence was denied.[9] Thereafter, Giz, on July 11, 1944, was classified as a medical student, and he remained deferred throughout the war.
 
 
 22
 No neutral alien was compelled to serve in our military forces, but when Giz claimed relief from such service because he was a neutral alien, Congress said that he was not to become a citizen of the United States in the future. To us it seems that Giz comes squarely within the interdiction.
 
 
 23
 The order of the District Court in No. 12839 is
 
 
 24
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 54 Stat. 885 (1940), as amended, 55 Stat. 845 (1941), 50 U.S.C.App. 303(a) (1946)
 
 
 [2]
 Mannerfrid v. United States, 2 Cir., 1952, 200 F.2d 730, 732, certiorari denied, 1953, 345 U.S. 918, 73 S.Ct. 729, 97 L. Ed. 1351; cf. McGrath v. Kristensen, 1950, 340 U.S. 162, 71 S.Ct. 224, where the Court did not pass on the validity of the regulations set forth in 340 U.S. at page 173, note 19, 71 S.Ct. at page 231, since they were not effective when Kristensen filed his application for relief
 
 
 [3]
 32 C.F.R. § 611.12
 
 
 [4]
 Mannerfrid v. United States, supra note 2; cf. Benzian v. Godwin, 2 Cir., 1948, 168 F.2d 952, certiorari denied, 1948, 335 U.S. 886, 69 S.Ct. 235, 93 L.Ed. 425, modified in part by McGrath v. Kristensen, supra note 2
 
 
 [5]
 § 611.13(a) (6)
 
 
 [6]
 Mannerfrid v. Brownell, 1956, 99 U.S. App.D.C. 171, 238 F.2d 32
 
 
 [7]
 Mannerfrid v. United States, supra note 2, 200 F.2d at page 732
 
 
 [8]
 U. S. Selective Service System, Problems of Selective Service, Vol. 1, p. 107 (1952)
 
 
 [9]
 Ex parte Ghosh, D.C.S.D.Cal.1944, 58 F.Supp. 851, is clearly distinguishable, for Ghosh, a Hindu, was on that account ineligible to become a citizen of the United States. Not being entitled to be either a citizen or a permanent resident, Ghosh would have been in the United States unlawfully unless he was here only temporarily as a visitor; cf. Estep v. United States, 1946, 327 U.S. 114, 121, 66 S.Ct. 423, 90 L.Ed. 567; and see U. S. Selective Service System, Problems of Selective Service, Vol. 2, pp. 134-143 (1952)