**Petition for Naturalization of Egon Ingvar FELLESON.**

**Petition No. 730-P-384339.**

United States District Court
N. D. Illinois.

Dec. 30, 1958.

Donald C. Lundquist, Zion, Ill., for petitioner.

Anthony D. Petrone, Jr., Designated Naturalization Examiner, Chicago, Ill., Irving I. Freedman, Asst. Dist. Director for Citizenship, Chicago Dist., Chicago, Ill., Charles Gordon, Regional Counsel, Northwest Region, St. Paul, Minn., for Immigration & Naturalization Service.

IGOE, District Judge.

The petitioner, Egon Ingvar Felleson, seeks citizenship under the general provisions of the naturalization law. No objection looms except the possible roadblock erected by a claim of exemption from military service made May 8, 1951, during our involvement in the Korean conflict. Felleson has asserted that he was advised at that time that the filing of this application was the only way he could obtain permission to visit his dying mother in Sweden. After his mother's death he evinced willingness to serve and someone, not identified in the record, has written "Cancelled" across his exemption application.

On April 1, 1952 Felleson was inducted into the United States Armed Forces and served almost two years, including combat action in Korea. Among his military decorations were the Korean Service Ribbon with two Bronze Service Stars, the National Defense Service Medal, and the United Nations Service Medal. On March 9, 1954 he was honorably discharged.

While in the Army overseas Felleson mailed an application for naturalization to the Central Office of the Immigration and Naturalization Service in Washington, D. C. This application relied on Public Law 86, 83rd Cong., 1st Sess., 8 U.S.C.A. § 1440a et seq., which awarded

enlarged naturalization rights to aliens who rendered honorable military service during the Korean episode. However, on February 24, 1954 the Service advised him that he had forfeited naturalization privileges because of his application for draft exemption, and that the subsequent military activity had not expunged the stigma. This administrative view of the Service later was altered. However, the special benefits of Public Law 86 expired December 31, 1955 and are no longer available.[1]

The Service has recommended that the petition for naturalization be granted. The underlying questions manifestly have wide impact.

Section 315 of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1426, provides:

"(a) Notwithstanding the provisions of section 405(b), any alien who applies or has applied for exemption or discharge from training or service in the Armed Forces or in the National Security Training Corps of the United States on the ground that he is an alien, and is or was relieved or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States.

"(b) The records of the Selective Service System or of the National Military Establishment shall be conclusive as to whether an alien was relieved or discharged from such liability for training or service because he was an alien."

Section 101(a) (19) of the Immigration and Nationality Act, 8 U.S.C.A. § 1101(a) (19), contains the following definition:

"The term 'ineligible to citizenship,' when used in reference to any individual, means, notwithstanding the provisions of any treaty relating to military service, an individual who is, or was at any time, permanently debarred from becoming a citizen of the United States under section 3(a) of the Selective Training and Service Act of 1940, as amended (54 Stat. 885; 55 Stat. 844), or under section 4(a) of the Selective Service Act of 1948, as amended (62 Stat. 605; 65 Stat. 76), or under any section of this Act, or any other Act, or under any law amendatory of, supplementary to, or in substitution for, any of such sections or Acts."

Since World War I the various selective service laws have allowed certain classes of aliens to apply for relief from conscription but have specified in each instance that the applicant thereafter would be debarred from becoming a citizen of the United States.[2] While these edicts originally were not inscribed in the naturalization statute, they unquestionably generated the loss of citizenship benefits. See Ceballos v. Shaughnessy, 1957, 352 U.S. 599, 77 S.Ct. 545, 1 L.Ed. 2d 583.

The inhibitions of the selective service laws were woven into the fabric of the naturalization statute itself by Sec. 315 of the Immigration and Nationality Act of 1952, quoted at an earlier point. That enactment decreed permanent ineligibility to citizenship of an alien who "applies or has applied" for relief from

---

1. A bill to renew the special naturalization benefits for Korean veterans was approved by the Senate on August 19, 1958 but the House did not have the opportunity to consider this measure before adjournment at its last session. See S. 3009 and S.Rep. 2366, 85th Cong., 2d Sess.

2. Sec. 2, Selective Draft Act of 1917, as amended by Act of July 9, 1918, 40 Stat. 885 (neutral alien who had filed declaration of intention to become a citizen); Sec. 3(a), Selective Training and Service Act of 1940, as amended by Act of December 20, 1941, 55 Stat. 884 (neutral alien); Sec. 4(a), Selective Service Act of 1948, 62 Stat. 604 (any alien); Sec. 4(a), Universal Military Training and Service Act of 1951, 65 Stat. 75 (certain aliens in temporary residence status), 50 U.S.C.A.Appendix, § 454(a).

military service "and is or was relieved or discharged from such training or service." A similar, but not identical, declaration is found in the definition of ineligibility to citizenship announced in Sec. 101(a) (19) of the 1952 Act, also reproduced at an earlier point. The legislative materials indicate that the 1952 codification had a dual purpose: (a) to record in the naturalization statute the disqualification forged by the selective service statutes, (b) to make certain that liabilities previously incurred under those statutes would not lapse. See S. Rep. 1515, 81st Cong., 2d Sess., pp. 725, 731.

Few would question the inherent reasonableness of the statutory plan. In honoring the alien's plea for relief from the draft Congress gave the alien "a choice of exemption and no citizenship, or no exemption and citizenship." Moser v. United States, 1951, 341 U.S. 41, 46, 71 S.Ct. 553, 556, 95 L.Ed. 729. An alien who made a voluntary choice to escape military service necessarily accepted the concomitant loss of naturalization privileges. Petition of Skender, 2 Cir., 1957, 248 F.2d 92, certiorari denied 355 U.S. 931, 78 S.Ct. 411, 2 L.Ed. 2d 413; Giz v. Brownell, 1956, 99 U.S. App.D.C. 339, 240 F.2d 25; Savoretti v. Small, 5 Cir., 1957, 244 F.2d 292. A key consideration is that this is a perpetual ban. It could be urged, perhaps, that allowance should be made for the passage of time or for change in circumstances, but Congress has not authorized such alleviation.

One perplexing situation is confronted when the alien who has applied for exemption later becomes available for military service, either through his voluntary choice or upon a change in the statute or regulation. The selective service laws have not dealt with this contingency and the selective service regulations never have directly sanctioned a withdrawal of the exemption application. It has been argued that an alien who later became available for military participation was not relieved from military duty and consequently is not debarred from citizenship. Petition of Caputo, D.C.E.D.1954, 118 F.Supp. 870; Kiviranta v. Brownell, D.C.1956, 141 F. Supp. 435. But when the alien's availability did not culminate in physical induction, this hypothesis is rejected by an overwhelming array of authorities, including Petition of Cuozzo's Naturalization, 3 Cir., 1956, 235 F.2d 184; Brownell v. Rasmussen, 1956, 98 U.S.App.D.C. 300, 235 F.2d 527, certiorari dismissed 355 U.S. 859, 78 S.Ct. 114, 2 L.Ed.2d 66; Giz v. Brownell, 1956, 99 U.S.App.D.C. 339, 240 F.2d 25; United States v. Kenny, 2 Cir., 1957, 247 F.2d 139; Jubran v. United States, 5 Cir., 1958, 255 F.2d 81.

The picture is quite different, however, when the alien actually has become a member of the armed forces. It is utterly incongruous to suppose that a person who in fact has worn the uniform and has performed military functions should be denied the naturalization boon because of a relinquished exemption claim. A distinction doubtless could be made if immunity was enjoyed during hostilities and the military involvement took place after the shooting stopped. Cf. United States v. Kenny, supra. But it seems that when the military duty was undertaken under reasonably comparable conditions, the denial of citizenship benefits to a combat veteran cannot be justified in logic or equity or on the basis of legislative intent. Under such circumstances it might well be found that the applicant was not relieved from military obligations and that under the injunction of Sec. 315 of the 1952 Act his access to naturalization benefits thus is not foreclosed. See United States v. Bazan, 1955, 97 U.S.App.D.C. 108, 228 F.2d 455; Kiviranta v. Brownell, supra; Petition of Caputo, supra.[3]

It is not necessary, however, to rest the disposition of Felleson's case on such

3. For similar rulings under the World War I legislation see In re Gustavson, D.C.S.D.Cal.1924, 300 F. 251; In re Siem, D.C.Mont.1922, 284 F. 868, affirmed United States v. Siem, 9 Cir., 1924, 299 F. 582.

a generalized estimation of the statute. For Congress itself resolved his dilemma by a legislative dispensation granting naturalization benefits to aliens who served actively and honorably in the United States armed forces for at least 90 days between June 25, 1950 and July 1, 1955 (spanning the period of Korean military conflict). Public Law 86, 83rd Cong. 1st Sess. This legislation, like its predecessor relating to World War II,[4] did not withhold the naturalization bounty from aliens who at one time had solicited exemption but had in fact served actively and honorably during the designated interval.

Felleson's experience tells us that at one time the administrative view of the Service was inhospitable to his plea. However, in June of 1954 the Service altered its view and took the position that an alien who applied for exemption from military service and who thereafter became eligible for benefits under Public Law 86 by serving actively and honorably in the armed forces of the United States for 90 days between June 25, 1950 and July 1, 1955 is not ineligible to citizenship. This change in the administrative view of the Service is reflected in the favorable recommendation in the petitioner's case.

It could be contended, possibly, that this petitioner cannot benefit from Public Law 86, which has expired, since his petition is presented under the general provisions of the naturalization law. But the administrative view of the Service does not project such a limited appraisal of the legislative design. Rather it declares, and I fully agree, that the military service, coupled with the legislative dispensation, extinguished the perpetual debarment from naturalization benefits. Public Law 86 was a remedial statute, designed to reward aliens who served in our armed forces during the critical period of the Korean affray. I can see no justification for finding that the former disability revived when the cutoff date for filing petitions under Public Law 86 had passed, and I hardly think that one who seasonably presented an application under that statute can be penalized when his application was rejected under an administrative ruling later deemed erroneous.

It is my opinion, therefore, that an alien who applied for exemption from military service and thereafter served actively in the armed forces of the United States for 90 days between June 25, 1950 and July 1, 1955 is not ineligible to citizenship, even though his petition is filed under the general provisions of the naturalization law.

The petition will be granted.

---

4. Sec. 701, Nationality Act of 1940, as amended, 8 U.S.C. § 1001, now 8 U.S.C.A. § 1440.