**In re Petition for Naturalization of James Joseph BERGIN.**

**No. 102852.**

United States District Court
D. New Jersey.

June 10, 1959.

James Joseph Bergin, pro se.

Julius Goldberg, Newark, N. J., for Immigration and Naturalization Service.

WORTENDYKE, District Judge.

On October 24, 1957, James Joseph Bergin (petitioner), an alien resident in this District, filed his petition for naturalization from which it appears that he was lawfully admitted for permanent residence in the United States at Buffalo, New York, on September 21, 1950. Petitioner is a native and citizen of Eire.

In or about February 1951, petitioner applied to the Irish Consulate in New York City for the purpose of availing himself of the provisions of a treaty between Eire and the United States of America permitting his exemption from compulsory service in the Armed Forces of the United States. In due course the Ambassador of Ireland to the United States requested of the Secretary of

State of the United States to take appropriate action, in accordance with the Treaty of Friendship, Commerce and Navigation between the two sovereignties, to secure the exemption sought by the petitioner. The request was granted and the exemption allowed.

On May 22, 1951, petitioner had written to his Local Board as follows:

"I wish to notify you within the 10 day limit ending on May 25 and request a hearing before the Local Draft Board for the purpose of Claiming Exemption from induction into the armed forces."

Acting pursuant to authorization from the Director of Selective Service, Local Board No. 19 for New Jersey requested petitioner to complete Form SSS–52–111. Under date of January 13, 1953, petitioner complied by executing, under oath, upon said form a request that he, as a citizen of the Republic of Ireland, be classified in IV–C. Immediately above the petitioner's written expression of this request are set forth upon the form the provisions of Section 315(a) and (b) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1426, reading as follows:

"(a) Notwithstanding the provisions of section 405(b), any alien who applies or has applied for exemption or discharge from training or service in the Armed Forces or in the National Security Training Corps of the United States on the ground that he is an alien, and is or was relieved or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States.

"(b) The records of the Selective Service System or of the National Military Establishment shall be conclusive as to whether an alien was relieved or discharged from such liability for training or service because he was an alien."

Pursuant to his application, he was accordingly classified IV–C.

Section 101(a) (19) of the Immigration and Nationality Act of 1952, 8 U.S. C.A. § 1101(a) (19) provides:

"The term 'ineligible to citizenship,' when used in reference to any individual, means, notwithstanding the provisions of any treaty relating to military service, an individual who is, or was at any time, permanently debarred from becoming a citizen of the United States under section 3(a) of the Selective Service Act of 1940, as amended [50 U.S. C.A.Appendix, § 454(a) (62 Stat. 605; 65 Stat. 76)], or under any section of this Act, or any other Act, or under any law amendatory of, supplementary to, or in substitution for, any of such sections or Acts."

Local Board Memorandum No. 39, issued by the National Headquarters of the Selective Service System on November 6, 1951, was amended on April 24, 1953, by Memorandum designated LBM No. 116. Section I of this latter memorandum recommended that "Local Boards review all cases of general registrants who have been classified in IV–C, who are citizens of a treaty nation, and who have been classified based on presentation of information concerning such citizenship." With LBM No. 116 was enclosed a form of statement to be used by Local Boards "for those registrants whose cases will be reviewed and also any registrants who, in the future, request relief or exemption because of their citizenship." The same memorandum directed that upon the enclosed suggested form the registrants whose cases would be reviewed should sign part "A" of the statement, while those registrants who did not request classification in IV–C by reason of their status should complete part "B". The form referred to is the same as that which petitioner had previously completed.

On April 9, 1956, petitioner was reclassified in V–A by his Local Board.

Petitioner testified before a Designated Examiner of the Immigration and

Naturalization Service that he was unquestionably able to read English, understood, spoke and wrote it, had been educated in high school, technical school and an agricultural college, and that he had read and fully understood all of the contents of Form SSS–52–111 in which he had claimed exemption from military service. Petitioner further testified, responsive to a question put to him by his own attorney, that in making his application for exemption from military service he understood that he might forever forego his rights to naturalization and citizenship.

Herman Kaner, Esq., the Designated Naturalization Examiner who took the petitioner's sworn testimony, has recommended, under date of January 9, 1959, pursuant to 8 U.S.C.A. § 1446(d), that the petition for naturalization be denied upon the ground that under section 315 of the Immigration and Nationality Act (8 U.S.C.A. § 1426), petitioner is permanently ineligible to become a citizen of the United States. The matter was thereupon referred to W. G. Folts, Esq., the Acting Regional Commissioner, Northeast Region, who concluded that the petitioner was *not* barred from becoming a citizen and recommended that the petition for naturalization be granted. This Court is now asked to determine which of these recommendations should be adopted.

I conclude that petitioner is permanently ineligible to become a citizen of the United States. United States v. Kenny, 2 Cir., 1957, 247 F.2d 139; In re Petition for Naturalization of Cuozzo, 3 Cir., 1956, 235 F.2d 184; Ballester v. United States, 1 Cir., 1955, 220 F.2d 399. See also Application of Mannerfrid, D.C. N.Y.1951, 101 F.Supp. 446, affirmed sub nom. Mannerfrid v. United States, 2 Cir., 1952, 200 F.2d 730. Although the District Court for the Northern District of Illinois in Petition for Naturalization of Felleson, 169 F.Supp. 471, 474, granted the petition for naturalization under 8 U.S.C.A. § 1440a et seq., it did so because the petitioner was an alien who had rendered honorable military service in combat activity in Korea. The Court in Felleson concluded that the "[L]egislative dispensation granting naturalization benefits to aliens who served actively and honorably in the United States Armed Forces for at least 90 days between June 25, 1950 and July 1, 1955 (spanning the period of Korean military conflict) * * * did not withhold the naturalization bounty from aliens who at one time had solicited exemption but had in fact served actively and honorably during the designated interval." The same Court, however, did reiterate the general principle (expressed in Kenny, supra) that "When the alien's availability did not culminate in physical induction, this hypothesis (that subsequent availability offsets debarment from citizenship because of exemption previously claimed) is rejected by an overwhelming array of authorities, * * *." Citing also In re Petition for Naturalization of Cuozzo, supra.

Acting Regional Commissioner Folts takes the "position that the statement by the petitioner (of January 13, 1953) requesting classification as IV–C, having been made prior to the amendment of April 24, 1953, to Local Board Memorandum No. 39, and not embodying its safeguards, should not result in his debarment from United States citizenship." The Acting Regional Commissioner cites Moser v. United States, 1951, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729, which held that a native of Switzerland who availed himself of the provisions of the Treaty of 1850, 11 Stat. 587, between that country and the United States, rendering him free from personal military service, did not by so doing debar himself from United States citizenship. This decision, however, was expressly rested upon the particular facts of the case, although the Court recognized that the statute (§ 3(a) of the Selective Training and Service Act of 1940, as amended, 50 U.S.C.A.Appendix, § 303(a)) imposed a valid condition on the claim of a neutral alien for exemp-

tion. "[P]etitioner had a choice of exemption and no citizenship, or no exemption and citizenship." 341 U.S. at page 46, 71 S.Ct. at page 556. The petitioner (Moser) was furnished DSS Form 301, as revised, for his execution in securing exemption under the treaty. That form expressly provided that its filing would "not waive your right to apply for American Citizenship papers." The form used, before revision, bore the printed warning above the place for petitioner's signature implicit in the following words: "I understand that the making of this application to be relieved from such liability will debar me from becoming a citizen of the United States." As a result of protest by the Swiss Legation to the Department of State, respecting the risk of debarment referred to in the form before revision, that its use was inconsistent with the treaty rights of Swiss citizens, the Legation was assured that the United States Government had no intention of abrogating treaty rights or privileges of Swiss nationals. The State Department, in conjunction with Selective Service Headquarters and the Swiss Legation, then negotiated an agreement upon a revised Form 301, which omitted the waiver of the privilege of applying for citizenship and merely stated that the application was for relief from liability for training and service in the land or naval forces of the United States. The Supreme Court, as well as the Second Circuit Court of Appeals and the District Court for the Eastern District of New York all found as a fact in Moser that "[P]etitioner signed the application for exemption believing that he was not thereby precluded from citizenship, and that had he known claiming exemption would debar him from citizenship, he would not have claimed it, but would have elected to serve in the armed forces." The Supreme Court said, (341 U.S. at page 47, 71 S.Ct. at page 556): "Petitioner did not knowingly and intentionally waive his rights of citizenship. In fact, because of the misleading circumstances of this case, he never had an opportunity to make an intelligent election between the diametrically opposed courses required as a matter of strict law. Considering all of the circumstances of the case, we think that to bar petitioner, nothing less than an intelligent waiver is required by elementary fairness. * * * To hold otherwise would be to entrap petitioner."

In both the Cuozzo and Kenny cases, supra, the general principle stated in Moser was reiterated. Kenny distinguished Moser factually, and in Cuozzo the following language of Judge Goodrich (235 F.2d at page 185) seems to express disapproval of the Acting Regional Commissioner's conclusion in our case: "We see no way of making the statute mean anything but what it says. There is no suggestion that this young man did not know what he was signing and the statement in form 130 is as explicit as the English language can make it. If, as has been suggested, administrative practice has been to refrain from insisting upon denial of citizenship to those aliens who do in fact serve their turn in the armed forces, that administrative practice cannot alter the explicit direction of the statute." Any doubt as to the present petitioner's understanding and intention is eliminated by the petitioner's own testimony before the Designated Examiner when he stated that the purpose of his visit to the Irish Consulate, after he had become aware of the treaty between Ireland and the United States, was "So that I wouldn't be drafted." Indeed, his letter of May 22, 1951, embodied a request for a hearing before his Local Draft Board for the purpose of claiming exemption from induction into the armed forces. When he signed the form which the Board furnished him, he knew he had a choice of the alternatives of being classified in IV–C and thereby precluding his subsequent admission to citizenship or relinquishing any right to exemption or deferment by reason of his Irish citizenship. I find myself unable to concur in the conclu-

:sion of the Acting Regional Commissioner.

Adopting, as I do, the recommendation of the Designated Naturalization Examiner, the petition of James Joseph Bergin for naturalization is denied.