**Petition for Naturalization of Jose Dominquez REGO.**
**No. 104500.**

United States District Court
D. New Jersey.
June 30, 1960.

---

3. See N. 1 supra.

18

Jack Mandell, Newark, N. J., for petitioner.

Edward L. Kowalski, Newark, N. J., for Immigration and Naturalization Service.

HARTSHORNE, District Judge.

Petitioner here seeks to become a citizen of the United States. The Naturalization Examiner, after consideration of Rego's case, came to the conclusion that having sought exemption from military service under the Selective Service Act of 1948, as amended in 1951, 50 U.S.C.A. Appendix, § 454(a) [1], petitioner was barred permanently from citizenship. The Regional Commissioner came to the opposite conclusion.

 Rego arrived in this country in the late 1940s from his native Spain, and on June 29, 1951, after being classified 1A by his Draft Board, sought by letter to secure an exemption from service as a Spanish National under the provisions of the then existing treaty between Spain and the United States, 33 Stat. 2105, 2108, art. 5. After various communications involving the Draft Board and the Spanish Embassy, petitioner was classified 4C (exemption for Foreign Nationals). This series of events occurred shortly after Congress, in 1951, amended the 1948 Selective Service Act. Thus the provisions of this amended Act are applicable. Following the passage of the Immigration and Nationality Act of 1952, the McCarran Act, petitioner signed a form prepared by the New Jersey Selective Service Board, in January, 1953, again seeking exemption from the draft under this later statute's provision, specifically § 315(a) [2]. In 1956, Rego was reclassified 1A and was subsequently inducted into the Army and served honorably for two years.

The first question which must be disposed of is which statute governs Rego's petition for citizenship. Unlike § 315(a)

1. "Except as otherwise provided in this title [sections 451–454 and 455–471 of of this Appendix], every male citizen of the United States and every male alien admitted for permanent residence, who is between the ages of 18 years and 6 months and 26 years, at the time fixed for his registration, or who attains the age of 18 years and 6 months after having been required to register pursuant to section 3 of this title [section 453 of this Appendix], or who is otherwise liable as provided in section 6(h) of this title [section 456(h) of this Appendix], shall be liable for training and service in the Armed Forces of the United States: Provided, That each registrant shall be immediately liable for classification and examination, and shall, as soon as practicable following his registration, be so classified and examined, both physically and mentally, in order to determine his availability for induction for training and service in the Armed Forces: Provided further, That any male alien who is between the ages of 18 years and 6 months and 26 years, at the time fixed for registration, or who attains the age of 18 years and 6 months after having been required to register pursuant to section 3 of this title [section 453 of this Appendix], or who is otherwise liable as provided in section 6(h) of this title [section 456(h) of this Appendix], who has remained in the United States in a status other than that of a permanent resident for a period exceeding one year (other than an alien exempted from registration under this title [sections 451–454 and 455–471 of this Appendix] and regulations prescribed thereunder) shall be liable for training and service in the Armed Forces of the United States, except that any such alien shall be relieved from liability for training and service under this title [said sections] if, prior to his induction into the Armed Forces he has made application to be relieved from such liability in the manner prescribed by and in accordance with rules and regulations prescribed by the President; but any alien who makes such application shall thereafter be debarred from becoming a citizen of the United States.
* * *"

2. "Notwithstanding the provisions of section 405(b) of this Act, any alien who applies or has applied for exemption or discharge from training or service in the Armed Forces or in the National Security Training Corps of the United States on the ground that he is an alien, and is or was relieved or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States." 8 U.S.C.A. § 1426(a).

of the McCarran Act, where a two-pronged requirement of both application for exemption and relief therefrom is necessary before there is a bar to citizenship, see Ceballos v. Shaughnessy, 1957, 352 U.S. 599, 77 S.Ct. 545, 1 L.Ed.2d 583 and United States v. Hoellger, 2 Cir., 1960, 273 F.2d 760, the 1948 Selective Service Act, by its express wording, bars anyone from citizenship if such person applies for exemption from military service. Petitioner here did make such application and would therefore appear to be barred from citizenship. It is clear that he has applied for exemption under both the Selective Service Act of 1948, as amended in 1951, and the McCarran Act of 1952. However, the McCarran Act, § 405(a) [3], states that any status existing at the time of the passage of the McCarran Act will not be affected by its passage. Thus Rego, having obtained a "status" under the 1948 statute, as amended, did continue to hold that "status" subsequent to the passage of the McCarran Act. See United States v. Hoellger, supra, 2 Cir., 1960, at page 763, footnote 3. Various other cases where both the 1948 statute and the 1952 statute were involved applied the 1952 Act without discussion as to which Act should apply. Certain of these decisions apparently are based on the supposition that the later Act applies, regardless of the previous situation; and this doubtless because the provisions of § 405(a) of the McCarran Act, supra, were not called to the attention of such courts. See In re Naturalization of Cuozzo, 3 Cir., 1956, 235 F.2d 184; Petition for Naturalization of Felleson, D.C.Ill.1958, 169 F.Supp. 471; In re Petition for Naturalization of Bergin, D.C.N.J.1959, 173 F.Supp. 883.

Petitioner claims first that, as recognized by the immigration authorities, he is a permanent resident alien, and that as such he could not be exempted from military service. Accordingly, he claims that his application for such exemption from service is a nullity, and that, since that application is nullified, his concomitant barring from citizenship itself becomes nullified. The difficulty with this reasoning is that it is far from clear that he could not be exempted from service on such application. In the next place, he did all he could to be exempted from service under the law, which itself stated that such acts would bar his citizenship. Thus he cannot now escape the consequences of his own actions, United States v. Carvajal, D.C.Cal.1957, 154 F.Supp. 525; Schenkel v. Landon, D.C. Mass.1955, 133 F.Supp. 305. Nor is petitioner advantaged by his claim that he sought exemption under the treaty between his mother country, Spain, and the United States. That treaty did not affect the matter of his citizenship when he applied for exemption from military service. Therefore the provisions of the Selective Service Act, that such application for exemption would bar such citizenship, are not in conflict with that treaty, Ballester v. United States, 1 Cir., 1955, 220 F.2d 399. Furthermore, even were there such a conflict, the statute, being the later expression of the national will, would prevail, insofar as the rights between Rego, a resident of this country, and the rights of the United States were

---

**3.** "Nothing contained in this Act [this chapter], unless otherwise specifically provided therein, shall be construed to affect the validity of any declaration of intention, petition for naturalization, certificate of naturalization, certificate of citizenship, warrant of arrest, order or warrant of deportation, order of exclusion, or other document or proceeding which shall be valid at the time this Act [this chapter] shall take effect; or to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, or any status, condition, right in process of acquisition, act, thing, liability, obligation, or matter, civil or criminal, done or existing, at the time this Act [this chapter] shall take effect; but as to all such prosecutions, suits, actions, proceedings, statutes [so in original; probably should read 'statuses'], conditions, rights, acts, things, liabilities, obligations, or matters the statutes or parts of statutes repealed by this Act [this chapter] are, unless otherwise specifically provided therein, hereby continued in force and effect. * * *" 8 U.S.C.A. § 1101 note.

concerned, Ballester v. United States, supra, and cases cited therein at page 402.

 Petitioner further argues that he was never apprised of the consequences of his efforts to gain exemption under the 1948 statute, and thus it would be inequitable to bar him from citizenship when he had no knowledge that this would be the result. However, Moser v. United States, 1951, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729, which petitioner cites to support this contention, involves a clearly different situation. In that case, Moser was affirmatively misled as to the consequences of his actions under the treaty between Switzerland and the United States. The form Moser signed expressly provided that its filing by him would "not waive your right to apply for American citizenship papers." Here the papers signed by Rego were to the exactly opposite effect. Here there is no affirmative misleading by anyone with regard to Rego. The fact that Rego may not have known that the law as it existed would bar him from citizenship if he sought exemption under the treaty is of no consequence, United States v. Kenny, 2 Cir., 1957, 247 F.2d 139. Furthermore, it is not at all clear that petitioner was unaware of the consequences of his acts. In a letter, written on June 29, 1951, to his Draft Board, petitioner said, in part:

"Since I never intended to become an American citizen, because I don't intend to live in the United States all my life, I ask you, sirs, to exempt me from military service."

This clearly infers that Rego knew of the connection between his military exemption application and the impossibility of his becoming an American citizen in the future.

It is quite true that the above differing Congressional statutes covering this subject matter—the Selective Service Act and the McCarran Act—have resulted in many difficulties, not to say personal hardships. But, when all is said and done, it is the duty of the Court to carry out the will of the Congress, not to bow to the bearing of individual hardship.

The bearing of personal hardship is solely for the decision of the Congress.

It is thus apparent that the conclusion of the Naturalization Examiner is correct and petitioner herein must be denied citizenship by virtue of his having sought exemption from military service under the treaty between Spain and the United States and during the period when the Selective Service Act of 1948, as amended in 1951, was in force, and had created a status recognized as still existing by the later McCarran Act, with its differing provisions.

An order may be entered accordingly.